## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JOHN OLAGUES and RAY WOLLNEY,

    Plaintiffs,

            v.

PERCEPTIVE ADVISERS LLC, JOSEPH EDELMAN,
PERCEPTIVE LIFE SCIENCES MASTER FUND, LTD.,
and REPROS THERAPEUTICS INC.,

    Defendants.

Case No. 1:15-CV-01190-AJN-SN

 

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS PERCEPTIVE ADVISERS LLC, JOSEPH EDELMAN AND PERCEPTIVE LIFE SCIENCES MASTER FUND, LTD.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

TANNENBAUM HELPERN
SYRACUSE & HIRSCHTRITT LLP
900 Third Avenue
New York, New York 10022
(212) 508-6700

*Attorneys for Defendants*
*Perceptive Advisers LLC, Joseph Edelman*
*and Perceptive Life Sciences Master Fund, Ltd.*

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

PROCEDURAL HISTORY ......................................................................................... 2

STATEMENT OF FACTS ......................................................................................... 3

ARGUMENT .............................................................................................................. 5

I.      APPLICABLE STANDARD UNDER FED. R. CIV. P. 12(B)(6) .................................... 5

II.     THE PERCEPTIVE DEFENDANTS ARE NOT SUBJECT TO LIABILITY
        UNDER SECTION 16(B) BECAUSE THEY WERE NOT STATUTORY
        INSIDERS WHEN THE CALLS EXPIRED ..................................................... 6

        A.      The Calls Were Not "Automatically Canceled" On March 15, 2013 ........................... 9

        B.      Plaintiffs' Reliance on OCC Rule 801 Is Misplaced .................................. 12

        C.      The Trade Date, Not the Delivery Date, Is Determinative of
                Section 16(b) Liability ..................................................................... 15

CONCLUSION ......................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40 (2d Cir. 1991) .................................................. 5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................................. 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 5

*Doe v. Columbia Univ.*, 101 F. Supp. 3d 356 (S.D.N.Y. 2015) ............................................... 5, 11

*Donoghue v. Local.com Corp.*, 2009 WL 260797 (S.D.N.Y. Feb. 3, 2009), aff'd sub nom.,
   *Donoghue v Hearst Communications, Inc.*, 355 Fed. Appx. 520 (2d Cir. 2009) ..................... 13

*Forgione v. Gaglio*, 2015 U.S. Dist LEXIS 21644 (S.D.N.Y. Feb. 13, 2015) ............................ 10

*Gebhardt v. Allspect, Inc.*, 96 F.Supp.2d 331 (S.D.N.Y. 2000) ................................................ 11

*Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305 (2d Cir. 1998) .................................... 6

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009) ............................................................................. 5

*Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) .............................................................. 5

*Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085 (2d Cir.1995) .................................................. 11

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) ...................... 11

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991) ....................................................... 5

*Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192 (3rd Cir. 1993) ................. 5

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.,* 507 F.3d 117 (2d Cir. 2007) ................... 11

*Prager v. Sylvestri*, 449 F.Supp. 425 (S.D.N.Y. 1978) .............................................................. 16

*Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418 (1972) ............................................ 6, 7, 8

*Roth v. Goldman Sachs Group, Inc.*, 740 F.3d 865 (2d Cir. 2014) ....................................... *passim*

*Starr v. Sony BMG Music Entm't*, 592 F.3d 314 (2d Cir. 2010) ................................................ 11

*United States v. Larionoff*, 431 U.S. 864 (1977) ...................................................................... 6

*U.S. v. Goichman*, 407 F. Supp. 980 (E.D.Pa. 1976) ................................................................ 10

**Statutes**                                                                                       **Page(s)**

15 United States Code Annotated § 78p(b) .............................................................. 6, 16

17 Code of Federal Regulations § 240.13d-1(j)..................................................... 4, 5, 8

17 Code of Federal Regulations § 240.16b-6 ........................................................ 7, 8

Federal Rules of Civil Procedure, Rule 12(b)(6) ............................................... 2, 3, 11

Federal Rules of Evidence, Rule 201 .................................................................. 10

**Other Authorities**

FINRA Rule 2360(b)(23)(A) ............................................................................... 14, 15

Options Clearing Corporation Rule 801 .......................................................... 12, 13, 14, 15

Options Clearing Corporation Rule 805 .......................................................... 10, 13, 14, 15

Options Clearing Corporation Rule 1000(b)(21) ................................................ 9, 12

SEC Release No. 34-18114 (Sept. 24, 1981)...................................................... 16

SEC Release No. 34-69772 (June 17, 2013)....................................................... 9

## PRELIMINARY STATEMENT

The claims asserted in this action are entirely without merit and are contrary to both the express terms of the statute upon which they are based, applicable regulatory authority, and controlling Second Circuit precedent. In their Second Amended Complaint (the "Complaint"), Plaintiffs John Olagues and Ray Wollney ("Plaintiffs") allege that Defendants Perceptive Life Sciences Master Fund, Ltd. (the "Fund"), Joseph Edelman ("Edelman"), and Perceptive Advisers, LLC (the "Adviser," and together with Edelman and the Fund, the "Perceptive Defendants"), are liable for "short swing" profits under Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act") ("Section 16(b)") in connection with the writing and expiration of certain call options[1] (the "Calls") of Repros Therapeutics, Inc. ("RPRX"). Section 16(b) requires "statutory insiders" (*e.g.*, officers, directors or owners of greater than 10% of a company) to disgorge profits derived from "matchable" transactions that occur within a six-month period; in this case, the writing of a series of the Calls, which gave the purchaser the right to purchase RPRX common stock, and the later expiration of the Calls. Plaintiffs contend that the Perceptive Defendants were statutory insiders by virtue of their ownership of more than 10% of RPRX stock. To establish the Perceptive Defendants' liability under Section 16(b), Plaintiffs are required to show that the Perceptive Defendants were statutory insiders both at the time the Calls were written and when they expired.

---

[1] For the Court's ease of reference, the term "option" refers to an options contract, which is an agreement between a buyer and seller that gives the purchaser of the option the right to buy or sell a particular asset at a later date at an agreed upon price. A "call option" is a contract that gives the buyer the right to buy a certain number of shares of an underlying equity at a predetermined price for a preset period of time. The seller of a call option is obligated to sell the underlying security if the call buyer exercises his or her option to buy on or before the option expiration date. A "put option" is a contract that gives the buyer the right to sell a certain number of shares of an underlying stock at a predetermined price for a preset time period. The seller of a put option is obligated to buy the underlying security if the put buyer exercises his or her option to sell on or before the option expiration date.

The fatal defect in Plaintiffs' Complaint is that the Perceptive Defendants were *not* 10% beneficial owners at the time the Calls expired. The Perceptive Defendants' beneficial ownership fell below 10% prior to the expiration of the Calls as a result of the Defendants' exercise of put options in RPRX (the "Puts"). Plaintiffs attempt to circumvent this defect by relying on a number of options trading rules and rule interpretations annexed to their Complaint which they claim somehow indirectly establish that Defendants were statutory insiders at the time the Calls expired. As will be shown, Plaintiffs' claim is not only unsupported by the rules they cite, but is contrary to controlling legal authority and the facts alleged in the Complaint.

Because Plaintiffs have failed to set forth any valid claim upon which relief can be granted, the Complaint should be dismissed in its entirety as a matter of law.[2]

## **PROCEDURAL HISTORY**

Plaintiffs, as shareholders of RPRX, initiated this derivative action on behalf of RPRX pursuant to Section 16(b) to recover alleged short swing profits realized by the Perceptive Defendants. (Compl., at 1-2.)[3] Plaintiffs filed their initial complaint on February 10, 2015. (ECF Doc. No. 1.) Plaintiffs and the Perceptive Defendants entered into a Stipulation so-ordered by this Court on August 12, 2015 which permitted Plaintiffs to file an Amended Complaint and provided the Perceptive Defendants with additional time to respond thereto. (ECF Doc. No. 15.) Plaintiffs filed their First Amended Complaint on or about September 10, 2015, and the Perceptive Defendants moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on or about October 13, 2015. (ECF Doc. Nos. 20 and 23.) Pursuant to this Court's Order dated October 14, 2015, Plaintiffs were given additional time to further amend their

---

[2] Since this is a derivative action, RPRX is a nominal defendant, and once the claim is dismissed as to the Perceptive Defendants, the action would, *a fortiori,* be dismissed as to RPRX.

[3] "Compl. at __" refers to pages of the Second Amended Complaint.

complaint, and on or about November 2, 2015, Plaintiffs filed the Second Amended Complaint which is the subject of this Motion.

## STATEMENT OF FACTS

For purposes of this Motion to Dismiss pursuant to Fed. R. Civ. P 12(b)(6), Plaintiffs' well-pleaded allegations are accepted as true.[4] They are briefly summarized below.

The Defendant Fund is a private investment fund managed by the Defendant Adviser. Defendant Joseph Edelman is a principal of the Adviser.[5] (Compl. at 5, Ex. 15) As alleged in the Complaint, the Perceptive Defendants filed a Form 4 with the Securities and Exchange Commission ("SEC") on March 20, 2013 (the "Form 4")[6] reporting that on Friday, March 15, 2013, the Fund exercised the Puts and thereby sold 2,050,000 shares that were due to expire on Saturday, March 16, 2013. (Compl. at 9, Ex. 14; *see also* Siciliano Decl., Ex. A.)[7] The Complaint further references the Calls written by the Fund, which gave the purchaser the right to purchase RPRX common stock. (Compl. at 4-10.) The Calls, like the Puts, also had an expiration date of March 16, 2013. (Compl. at 4, Ex. 14.)

---

[4] The facts recited herein are accepted as true solely for the purposes of this motion, and the Perceptive Defendants reserve the right to dispute any or all of the facts alleged in the Complaint in the event this motion is not granted.

[5] As discussed at p. 7, *infra*, the Court may consider facts in documents annexed to or referenced in the pleadings in deciding a motion to dismiss.

[6] A Form 4 is required to be filed with the SEC by statutory insiders pursuant to Section 16(a) of the Exchange Act whenever such insiders engage in certain transactions in the securities of the company of which they are an insider.

[7] A copy of the Form 4 is annexed to the Complaint as Ex. 14. A more legible copy of the Form 4 is annexed as Ex. A to the Declaration of Ralph A. Siciliano dated December 3, 2015 ("Siciliano Decl."), submitted in support of this Motion.

As reflected on the Form 4, as a result of the exercise of the Puts, the Fund's beneficial ownership of RPRX common stock fell to 4.7% on March 15, 2013. (Compl., Ex. 14.)[8] The same Form 4 reported that the Calls written by the Fund expired unexercised on their set expiration date, March 16, 2013. Thus, the Form 4 reflected that the Perceptive Defendants ceased being statutory insiders as of March 15, 2013, prior to the date on which the calls expired on March 16, 2013. Citing various rules promulgated by the Options Clearing Corporation ("OCC Rules"), Plaintiffs contend that the Calls did not expire on their set expiration date (March 16, 2013), but were actually *canceled* one day prior, on March 15, 2013. (Compl. at 6.) Plaintiffs further aver that, pursuant to the OCC Rules in effect at that time, the Puts could not have been exercised on March 15, 2013.

As discussed in more detail below, Plaintiffs have relied upon a muddled and misguided construction of the relevant OCC Rules to concoct their allegations against the Perceptive Defendants. When the text of these rules is examined and properly applied, it is readily apparent, based upon facts alleged in the Complaint itself, that the Puts *must* have been exercised before the Calls expired, and that the Perceptive Defendants did not own 10% or more of the common stock of RPRX when that expiration occurred. Consequently, the facts as alleged by Plaintiffs fail to establish the Perceptive Defendants' liability under Section 16(b), and the Complaint must be dismissed in its entirety.

---

[8] Under Exchange Act Rule 13d-1(j), 17 C.F.R. § 240.13d-1(j), insiders are entitled to rely on the outstanding share number reported in the issuer's most recent public filing when determining 10% beneficial owner status. Based on the number of outstanding shares of RPRX as reported on RPRX's Quarterly Report on Form 10-Q for the quarter ended September 30, 2012, filed with the SEC on November 14, 2012, which was the most recent filing at the time the Puts were exercised, the Perceptive Defendants beneficially owned only 4.7% of RPRX common stock. Also, based on RPRX's Annual Report on Form 10-K, for the year ended December 31, 2012, which was filed with the SEC on March 18, 2013 (*i.e.,* after the Puts were exercised but before the Form 4 reporting the trade was filed), the Perceptive Defendants' beneficial ownership had fallen to 4.35%. The relevant pages of the aforementioned Form 10-Q and Form 10-K are annexed to the Siciliano Decl. as Exs. B and C, respectively. The Court may and should take judicial notice of RPRX's Quarterly and Annual Reports as public filings with the SEC. (*See* pp. 7 and 13, *infra.*)

## **ARGUMENT**

### I.    **APPLICABLE STANDARD UNDER FED. R. CIV. P. 12(B)(6)**

To survive a motion to dismiss, a claimant must allege sufficient facts which, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To determine plausibility, courts employ a "two-pronged approach." *Iqbal*, 556 U.S. at 679. First, while a court must accept all allegations as true, this principle is inapplicable to legal conclusions, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Accordingly, courts must disregard "mere conclusory statements or legal conclusions," as they "are not entitled to the presumption of truth." *Doe v. Columbia Univ.*, 101 F. Supp. 3d 356 (S.D.N.Y. 2015) (internal citations omitted). Second, a court must determine whether "well-pleaded factual allegations" assumed to be true "plausibly give rise to an entitlement to relief." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (*quoting Iqbal*, 556 U.S. at 679).

A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). It is well settled that courts may take judicial notice of public records on a motion to dismiss. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1197 (3rd Cir. 1993). "Securities and Exchange Commission filings fall within this category of public records." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

In the instant matter, Plaintiffs' allegations cannot withstand scrutiny under Fed. R. Civ. P. 12(b)(6). Plaintiffs' Complaint is rife with unfounded factual allegations, legal conclusions, and inaccurate restatements of options exercise procedures that in no way, let alone "plausibly,"

entitle them to relief. For these reasons and those set forth below, the Court should dismiss the Complaint in its entirety.

## II. THE PERCEPTIVE DEFENDANTS ARE NOT SUBJECT TO LIABILITY UNDER SECTION 16(B) BECAUSE THEY WERE NOT STATUTORY INSIDERS WHEN THE CALLS EXPIRED

Section 16(b) requires statutory insiders (i.e., directors, officers, and beneficial owners of more than 10% of a company's outstanding shares) to disgorge to the issuer profits that result from "matchable" purchases and sales of the issuer's securities which occurred within six months of each other, but only if the person was a statutory insider at the time of the purchase and sale. In relevant part, Section 16(b) provides as follows:

> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer . . . within any period of less than six months . . . shall inure to and be recoverable by the issuer . . . . *This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security.*

15 U.S.C.A. § 78p(b) (emphasis added). Thus, the four elements for establishing potential liability under Section 16(b) are "(1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities (4) within a six-month period." *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir. 1998). In accordance with these mandates, courts consistently have held that, for purposes of imposing Section 16(b) liability, a person who is a statutory insider by virtue of being a greater than 10% beneficial owner must be so "both at the time of the purchase and sale . . . of the security involved." *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 423 (1972).

As part of regulations adopted in 1991 to address derivative securities under Section 16, the SEC promulgated Rule 16b-6(d), pursuant to Section 16(b), which provides in relevant part: "Upon cancelation or expiration of an option within six months of the writing of the option, any profit derived from writing the option shall be recoverable under Section 16(b) of the Act." 17 C.F.R. § 240.16b-6(d) (hereinafter referred to as "Rule 16b-6(d)"). As courts have recognized, the SEC is not permitted to expand liability beyond the statute it is interpreting. *See United States v. Larionoff*, 431 U.S. 864, 873 (1977). Thus, Rule 16b-6(d) must be read consistently with Section 16(b); that is, under the Rule, profits are only recoverable if the writing of the option and the expiration of the option occurred while the person was a statutory insider. This was confirmed by the Second Circuit in *Roth v. Goldman Sachs Group, Inc.*, 740 F.3d 865 (2d Cir. 2014).

In *Goldman*, a shareholder brought an action under Section 16(b) and Rule 16(b)-6(d) alleging that Goldman failed to disgorge profits realized by writing short call options that expired unexercised. While the writing and the expiration of the calls occurred during a six-month time period, and Goldman Sachs Group, Inc. ("Goldman") was a greater-than-10% owner at the time the calls were written, Goldman's beneficial ownership fell below 10% before the calls expired. Thus, Goldman was not a statutory insider when the calls expired. *Id*. at 871-72. The parties in *Goldman* agreed that the writing of a call option constitutes a sale of a derivative security. *Id.* at 871. The Court held that the expiration of the call options within six months of their being written constituted a "purchase" for purposes of 16(b). *Id.* at 871. The Court also held that the "two transactions – a sale and a purchase of securities – are required to trigger liability under Section 16(b), and the status as a statutory insider must exist at the time of each transaction." *Id.* at 870 (citing *Reliance*, 404 U.S. at 423-25). The Court noted that the Supreme Court in *Reliance*

"allowed a statutory insider to purposefully drop its holdings to slightly under ten percent so as to sell the remainder without liability under Section 16(b)." *Id.* at 874. Therefore, Section 16(b) "'clearly contemplates that a statutory insider might sell enough shares to bring his holdings below ten percent, and later—but still within six months—sell additional shares free from liability under the statute.'" *Id.* (citing *Reliance,* 404 U.S. at 423). Since the calls expired when Goldman's beneficial ownership fell below 10%, the Second Circuit held that Goldman was not required to disgorge profits under Section 16(b). *Id.* at 875.

*Goldman* is directly controlling here and requires dismissal of the Complaint. The Perceptive Defendants' exercise of the Puts resulted in the disposition of 2,050,000 shares of RPRX common stock and reduced the Perceptive Defendants' beneficial ownership of RPRX common stock to 812,560 shares or 4.7% of the outstanding shares of RPRX. (Siciliano Decl., Ex. A.) Indeed, the Perceptive Defendants then amended their report on Schedule 13G to reflect this reduction in beneficial ownership as of March 15, 2013. (*See* the Amended Schedule 13G/A, annexed to the Compl. as Ex. 15.)[9] When the Calls expired on March 16, 2013, the Perceptive Defendants were no longer statutory insiders because they no longer were beneficial owners of more than 10% of RPRX's common stock. Since the Perceptive Defendants were not statutory insiders when the Calls expired, they were not subject to liability for short-swing profits under Section 16(b) and Rule 16b-6(d).

---

[9] A Schedule 13G is required by Section 13(d) and Rule 13d-1 of the Exchange Act to be filed with the SEC by persons holding greater than 5% of a class of an issuers' securities. 17 C.F.R. 240.13d-1. Amendments are required annually to update ownership and, for reporting persons owning more than 10% of a class, promptly following a reduction in ownership of 5% or more. 17 C.F.R. 240.13d-2. In this case, the Perceptive Defendants amended Schedule 13G based on the reduction in ownership due to the exercise of puts on March 15, 2013 and reported ownership based on the 812,560 shares of RPRX common stock owned following the exercise of the puts, noting 4.35% ownership on their Schedule 13G Amendment due to the use of a more updated outstanding share number that appeared in the issuer's annual report, filed after March 15, 2013 but before the amended Schedule 13G was filed. (Compl., Ex. 15.)

Nonetheless, Plaintiffs attempt to circumvent *Goldman* and hold the Perceptive Defendants liable for short-swing profits using three flawed arguments: (1) that the Calls written by the Fund were "automatically canceled" on the day prior to their expiration; (2) that the Puts could not have been exercised on March 15, 2013; and (3) that the Perceptive Defendants remained beneficial owners of the stock sold pursuant to the exercise of the Puts after March 16, 2013 because they could have delivered RPRX shares other than the shares they owned when the trade was settled several days later. For the reasons discussed below, each of these arguments fails as a matter of law.

A.    The Calls Were Not "Automatically Canceled" On March 15, 2013

Plaintiffs allege in their Complaint that the Calls, instead of expiring on March 16, 2013, "were automatically 'canceled' on Friday March 15, 2013 at approximately 4:30 p.m. CST, unless instructions to exercise . . . was [sic] given to their clearing firm prior to 4:30 CST Friday," and "[n]o exercise instructions were ever given . . . ." (Compl. at 6.) Plaintiffs' allegation appears to be based on the so-called "exercise-by-exception" rules of the OCC; however, nothing in those rules, or in any other rule, supports their allegation.

OCC Rule 1000(b)(21) provides that all options (including calls and puts) expiring prior to February 1, 2015 have an expiration date that is "11:59 p.m., Eastern Time, the Saturday immediately following the third Friday of the expiration month of such option contract . . . ." (Siciliano Decl., Ex. D); *see also* SEC Release No. 34-69772 (June 17, 2013) at p. 2, annexed to Siciliano Decl. as Ex. E (adopting an OCC rule change and noting that until the change goes into effect [which occurred after the Calls were written] standard option contracts expired at 11:59 E.S.T. on the Saturday following the third Friday of the expiration month). The Saturday after the third Friday of March 2013 was Saturday, March 16, 2013 and, consequently, the Calls

expired at 11:59 p.m. EST on that date.[10] Plaintiffs concede in their Complaint that the expiration date of the Calls was March 16, 2013, and, because they were out-of-the-money on the last trading day before expiration, they were never exercised. (Compl. at 6.) Plaintiffs go on to allege, however, that because the Calls were out-of-the-money and were not exercised, they were "automatically canceled" on the last trading day, March 15, 2013. Nothing in the OCC Rules or interpretations annexed to the Complaint supports this conclusion.

The OCC Rules contain a so-called "exercise-by-exception" rule which provides that options which are *in-the-money* on the last business day on which they are exercisable will be automatically *exercised* unless contrary instructions are given. (*See* OCC Rule 805, annexed to Siciliano Decl. as Ex. F.) As explained in a memorandum issued by the OCC on January 6, 2010:

> 'Exercise by exception' is an administrative procedure used by OCC to expedite the exercise of expiring options by Clearing Members. In this procedure options which are in-the-money by specified threshold amounts are exercised unless the Clearing Member submits instructions not to exercise these options. 'Exercise by exception' is a procedural convenience extended to OCC Clearing Members, which relieves them of the operational burden of entering individual exercise instructions to every option contract to be exercised.

(OCC Memorandum: "Underlying Prices for Expiration – Reminder", dated Jan. 6, 2010, annexed to Siciliano Decl. as Ex. G.) Based on the foregoing, the OCC Rules provide for automatic *exercise* of in-the-money options. Contrary to the allegations in the Complaint, there is nothing in the OCC Rules which provide for the automatic *cancelation* of out-of-the-money

---

[10] As with SEC filings and other public records, formal publications, rules and regulations of self-regulatory organizations such as the OCC and the Financial Industry Regulatory Authority ("FINRA") are appropriate for judicial notice because they can be accurately and readily determined from sources whose accuracy cannot be reasonable questions under Fed. R. Evid. 201. *See, e.g., Forgione v. Gaglio*, 2015 U.S. Dist LEXIS 21644 (S.D.N.Y. Feb. 13, 2015) (taking judicial notice of FINRA's registration requirements and publicly available reports FINRA was required to maintain); *U.S. v. Goichman*, 407 F. Supp. 980 (E.D.Pa. 1976) (taking judicial notice of SEC NASD and NYSE bookkeeping regulations).

options. And, as noted above, Plaintiffs concede that the Calls were out-of-the-money on the last trading day before their expiration date. (Compl. at 6.)

The concept of "automatic cancelation" is a pure fiction conjured up by Plaintiffs in an effort to overcome the fact that the Calls expired by their terms at 11:59 pm on March 16, 2013. Consequently, Plaintiffs' contention that the Calls were canceled on March 15, 2013 is completely unfounded and should be ignored. *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice."); *see also Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1095 (2d Cir.1995) (sustaining dismissal of the complaint where "attenuated allegations" supporting a claim "are contradicted both by more specific allegations in the complaint and by facts of which (the court) may take judicial notice.").

Also, because Plaintiffs' allegation that the Calls were "automatically canceled" is a legal conclusion, the Court may reject it on that basis as well. *See Starr v. Sony BMG Music Entm't,* 592 F.3d 314, 321 (2d Cir. 2010) (citing *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.,* 507 F.3d 117, 121 (2d Cir. 2007)) ("We review *de novo* a district court's dismissal of a complaint for failure to state a claim under Federal Rules of Civil Procedure Rule 12(b)(6), accepting all factual allegations as true, but 'giving no effect to legal conclusions couched as factual allegations'"); *Gebhardt v. Allspect, Inc.,* 96 F.Supp.2d 331, 333 (S.D.N.Y. 2000) ("In order to avoid dismissal, a plaintiff must do more than plead mere '[c]onclusory allegations or legal conclusions masquerading as factual conclusions.'"); *Doe v. Columbia Univ.*, 101 F. Supp. 3d 356 ("First, the court must distinguish between facts, on the one hand, and 'mere conclusory

statements' or legal conclusions on the other hand; the latter are not entitled to the presumption of truth and must be disregarded.").

Since the Calls were not automatically canceled on March 15, 2013, but instead expired by their terms at 11:59 p.m. on March 16, 2013 when the Perceptive Defendants were no longer statutory insiders, Plaintiffs have failed to state a claim under Section 16(b).

B.    Plaintiffs' Reliance on OCC Rule 801 Is Misplaced

In a further attempt to demonstrate that the Perceptive Defendants were statutory insiders at the time the Calls expired, Plaintiffs allege that the Puts could not have been exercised on March 15, 2013 because such exercise would have been prohibited by OCC Rule 801. (Compl. at 5-6.) While, as discussed below, OCC Rule 801 did not apply to the Perceptive Defendants' exercise of the Puts, it would not change the result even if it did apply. That is because it simply does not matter if the Puts were exercised on Saturday rather than on Friday, since even then the Puts necessarily would have been exercised before the Calls expired, so that the Perceptive Defendants would not have been statutory insiders when the Calls expired – which Plaintiffs are required to show in order to state a claim.

More specifically, even if the Puts were exercised on Saturday, March 16, 2013, Plaintiffs nevertheless concede that the Puts *were exercised*. (Compl. at 6.). Since the Puts and Calls were both scheduled to expire on that day (*see* Form 4, Compl., Ex. 14), both the Puts and the Calls would have expired simultaneously (if unexercised) at 11:59 on March 16, 2013, pursuant to OCC Rule 1000b(21). Since the Puts were exercised and the Calls were not exercised (*see* Compl. at 6), the Puts obviously had to have been exercised before all options expired on that date, including the Call options at issue in this case. Logically, a Put cannot be exercised after it has expired – indeed, if expiration preceded exercise, there would be nothing left to exercise.

It does not matter, therefore, whether the Puts were exercised on March 15 or 16, 2013 since, in all events, the Puts were exercised before the Calls expired and, as a result, the Perceptive Defendants were not statutory insiders when the Calls expired. *See Goldman,* 740 F.3d. at 875.

In this scenario, assuming *arguendo* that the Puts were exercised on Saturday, March 16, it may be that the Puts were exercised only moments before the Calls expired. However, there is no prescribed period of time which must pass between the point at which a person ceases to be a statutory insider and the time the potentially matchable trade occurs. For example, in *Donoghue v. Local.com Corp.*, the court dismissed the plaintiff's Section 16(b) claim because the transaction which caused the defendant's beneficial ownership to fall below 10% took place at 4:06 pm, and the transaction which would have constituted the matchable trade, for Section 16(b) purposes, occurred at 4:32 pm – a period of 26 minutes. *See* 2009 WL 260797, *3 (S.D.N.Y. Feb. 3, 2009), aff'd sub nom*., Donoghue v Hearst Communications, Inc.*, 355 Fed. Appx. 520 (2d Cir. 2009).

Furthermore, Plaintiffs' reliance on OCC Rule 801 for its allegation that the Perceptive Defendants were not permitted to exercise the Puts on March 15, 2013 is entirely misplaced. Because the Puts were in-the-money on the last business day before their expiration date,[11] they were governed by the exercise-by exception provisions of OCC Rule 805 discussed at pages 12-13, *supra*, not OCC Rule 801. Under the exercise-by-exception provisions of OCC Rule 805, March 15, 2013 was the correct date for the exercise of the Puts reported by the Perceptive Defendants on the Form 4. This is shown by one of the exhibits annexed to the Plaintiffs' Complaint. Exhibit 2 to the Complaint is a letter, dated April 17, 2013, from Stephen Szarmack,

---

[11] The Complaint states on p. 4 that the closing price of RPRX stock on Friday, March 15, 2013 was $9.42, and, as reflected on the Form 4, the Puts were exercisable at $12.50.

the Associate Counsel for the OCC, which discusses the proposed rule change which would move the expiration date for options from the third Saturday to the third Friday of the month. In explaining why Friday expirations would be consistent with the then-*current* procedure for processing options (*i.e.,* for options expiring on Saturday), Mr. Szarmack states that under "the long-standing rules and procedures of the options exchanges and the Financial Industry Regulatory Authority ('FINRA') . . . exercise decisions with respect to expiring standard exercise contracts must be made by, and exercise instructions may not be accepted from customers after, *5:30 p.m. Eastern Time on the business day preceding expiration (usually Friday)*." (Compl., Ex. 2.) This excerpt from Mr. Szarmack's letter clearly states that exercise decisions may be made on the Friday before the Saturday expiration date.[12] This is also confirmed by the FINRA Rules cited in Mr. Szarmack's letter. FINRA Rule 2360(b)(23)(A), as it was in effect at the time the Perceptive Defendants exercised the Puts, stated in pertinent part:

> (ii) Special procedures apply to the exercise of standardized equity options on the last business day before their expiration ("expiring options"). Unless waived by The Options Clearing Corporation, expiring standardized equity options are subject to the Exercise-by-Exception ("Ex-by-Ex") procedure under The Options Clearing Corporation Rule 805. This Rule provides that, unless contrary instructions are given, standardized equity option contracts that are in-the-money by specified amounts shall be automatically exercised. In addition to The Options Clearing Corporation rules, the following FINRA requirements apply with respect to expiring standardized equity options. Option holders desiring to exercise or not exercise expiring standardized equity options must either:
>
>> a. take no action and allow exercise determinations to be made in accordance with The Options Clearing Corporation's Ex-by-Ex procedure where applicable; or

---

[12] Mr. Szarmack states on page 5 of his letter that "Rule 801 would be amended to modify the prohibition against exercising an American option contract on the business day prior to its expiration date because this prohibition is necessary only for options expiring on a Saturday." This further confirms that the prohibition against Friday exercises only applies to exercises made under OCC Rule 801 and not automatic exercises which are subject to OCC Rule 805.

b.  submit a "Contrary Exercise Advice" by the deadline specified below.

(iii) Exercise cut-off time. Option holders have until 5:30 p.m. Eastern Time ("ET") on the business day immediately prior to the expiration date to make a final exercise decision to exercise or not exercise an expiring option. Members may not accept exercise instructions for customer or non-customer accounts after 5:30 p.m. ET. [FINRA Rule 2360(b)(23)(A)(ii) and (iii).][13]

Based on the FINRA Rule cited above and Mr. Szarmack's letter (the latter of which Plaintiffs themselves rely upon in their Complaint), the proper trade date for reporting the automatic exercise of the Puts by the Perceptive Defendants was March 15, 2013 since that was the date on which the "exercise decision" was made under the automatic exercise procedures of OCC Rule 805.

Based on the foregoing, Plaintiffs' reliance on OCC Rule 801 is entirely misplaced and the Rule does not provide any support for their claim under Section 16(b).

C.   The Trade Date, Not the Delivery Date, Is Determinative of Section 16(b) Liability

In a final attempt to circumvent the holding in *Goldman*, Plaintiffs allege that, although the Puts were exercised before they expired, the Perceptive Defendants did not cease to be beneficial owners of more than 10% of the RPRX stock until March 20, 2013. (Compl. at 9). Plaintiffs seek to support this allegation by further alleging that, instead of delivering the RPRX shares in its possession on the delivery date, the Perceptive Defendants were "allowed and ha[d] discretion to meet their obligation by a) borrowing the shares for delivery or by buying the stock on March 18 or march 19 for delivery . . . ." This allegation is contrary to well-established legal

---

[13] The full text of FINRA Rule 2360(b)(23)(A) in effect at the time the Puts were exercised is annexed to the Siciliano Decl. as Ex. H.

precedent and SEC regulations, and is asserted without any allegation that the Perceptive Defendants did in fact settle the trade with borrowed shares.

It is well-settled that the trade date – *i.e.*, the date on which the Puts were exercised – is the relevant date for reporting Section 16 transactions and changes in beneficial ownership. This notion was confirmed in *Prager v. Sylvestri*, where the Court held that "[t]he technicalities of stock transfers, such as the passing of title or the exchange of the shares are, by themselves, of no import for [Section] 16(b) purposes." 449 F.Supp. 425, 432-33 (S.D.N.Y. 1978). It was subsequently ratified in an SEC Release dated September 24, 1981, which affirmed that an insider "divests himself of…beneficial ownership at the time he makes a firm commitment for its sale," and "[t]he insider affects a change in his beneficial ownership of the security at the time the sell order is executed." (SEC Release No. 34-18114, Questions 16 and 18 (Sept. 24, 1981), annexed to Siciliano Decl. as Ex. I.) Thus, the settlement date, or the date on which the RPRX shares were to be delivered following the exercise of the Puts, is irrelevant for purposes of Section 16(b).

Because the aforementioned case law and SEC Release conclusively establish that the trade date controls when the Perceptive Defendants ceased to be statutory insiders, it does not matter what the Perceptive Defendants "were allowed or ha[d] discretion" to do at a later date. As set forth above, it is undisputed that the Puts were exercised. That exercise immediately extinguished the Perceptive Defendants' "insider" status. Therefore, any contention as to what the Perceptive Defendants "could" or "might have done" after the Puts were exercised is irrelevant and in no way transforms Plaintiffs' conclusory allegation into a viable cause of action. For this reason, it must be dismissed.

## CONCLUSION

For the foregoing reasons, the Perceptive Defendants respectfully request that this Court dismiss Plaintiffs' Complaint in its entirety.


Dated: New York, New York               TANNENBAUM HELPERN SYRACUSE
       December 3, 2015                  & HIRSCHTRITT LLP

                                           By:   /s/ Ralph A. Siciliano
                                              Ralph A. Siciliano

                                         900 Third Avenue
                                         New York, New York 10022
                                         Phone No. (212) 508-6700
                                         *Attorneys for Defendants*
                                         *Perceptive Advisers LLC,*
                                         *Joseph Edelman and Perceptive*
                                         *Life Sciences Master Fund Ltd.*