

RECEIVED
SDNY PRO SE OFFICE
2016 JAN -7  PM 3: 44

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/7/16

JOHN OLAGUES
413 Sauve Rd
River Ridge LA. 70123
504-305-4071
olagues@gmail.com

RAY WOLLNEY,
8331 Whiskey Preserve Circle # 421
Fort Myers Fla. 33919
239-690-7754
rwollney1@comcast.net

Pro Se Plaintiffs,

Civil Case No.:  1:15-CV- 1190 AJN-SN
Rule 56 Motion for Summary Judgment,
Private right of action under Section 16 b

v.

Perceptive Advisors, Joseph Edelman
Repros et al
       Defendants

## Motion for Summary Judgment Rule 56 FRCP

Below is FRCP Rule 56

### Rule 56. Summary Judgment

(a) MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

----------------------------------

Plaintiffs have alleged and have proven all of the required elements of this Section 16 b suit pursuant to SEC Rule 16 b-6(d) below.

### 16 b-6(d)

*Upon cancellation or expiration of an option within six months of the writing of the option, any profit derived from writing the option shall be recoverable under section 16(b) of the Act. The profit shall not exceed the premium received for writing the option.*

The 5 necessary elements needed to show a violation of Rule 16 b-6(d) in the Repros Pharmaceutical case are below:

1. The writing by Perceptive Advisors of 23,000 calls on 2,300,000 underlying shares of Repros.
2. The cancellation or expiration of the written calls within less than 6 months of the writing of the calls.
3. A profit from the writing of the calls and the cancellation or expiration of those calls, which is approximately $1.7 million
4. The fact that the writer of the calls was an insider (i.e. a beneficial owner of more than 10% of the stock of Repros) at the time of the writing of the calls and
5. The fact that the writer of the calls was an insider (i.e. a beneficial owner of more than 10% of the stock of Repros) at the time of the cancellation or expiration of the written calls.

Defendants concede the above elements 1- 4. But they dispute element 5 above.

Their dispute of element 5 consists of several claims.

2

e) They claim in their Form 4 filings that Perceptive Advisors exercised puts on 2,050,000 shares of Repros on March 15, 2013, the Friday immediately before the expiration date of Saturday March 16, 2013. This was stated in their SEC Form 4 in 15 different entries, which have not been corrected as of the day of this writing. They made this claim and have refused to correct the filing, knowing that the alleged exercise of the puts on 2,050,000 shares on Friday March 15, 2013 was prohibited by the Options Clearing Corporation Rules 801 and 805. This prohibition was confirmed in letters from the attorneys for the OCC, and several other documents produced as exhibits to this court.

f) They also claim in their form 4 filings that on March 15, 2013 they sold 2,050,000 shares of Repros that they owned on the Friday immediately before the expiration date of Saturday March 16, 2013. They claim that the sales of their stock on Friday March 15, 2013 were a result of the exercise of the puts on Friday March 15, 2013. This was stated in their SEC Form 4 in 15 different entries, which have not been corrected as of the day of this writing. They know that the exercise of the puts on 2,050,000 shares on March 15, 2013 was prohibited by the Options Clearing Corporation Rules 801 and 805. But they still claim that the exercise of the puts on Friday March 15, 2013, (which is impossible) reduced their beneficial ownership to below 10% on Friday March 15, 2013.

g) As a result of Plaintiffs making Perceptive Advisors aware that it was prohibited to exercise their puts on March 15, 2013, a Friday, they now claim that giving instructions to allow the exercise of the puts on Saturday March 16, 2013 constitutes selling their long stock on Friday March 15,2013. And they refuse to correct their SEC Form 4s filing.

h) They also claim that the calls, (i.e. the calls that they wrote which were cancelled on Friday March 15, 2013 at 5:30 P.M. EST), were not cancelled and did not expire until Saturday, March 16, 2013. They make this claim in the face of the fact, that the owners of the calls, that they wrote, could not exercise the calls on Friday and did not give instructions to exercise on Saturday. It was prohibited by OCC Rule 801 and 805 for the owners of the calls to exercise on Friday, March 15, 2013 and thus the owners of the calls did not exercise on Friday or before. They also did not on Friday March.

3

15, 2013 give instructions to the OCC to exercise their calls on Saturday, which would have been required for them to exercise on Saturday at 11:59 P.M EST. So after 5:30 P.M. EST Friday, the calls that the owners had were cancelled and had expired. At 5:30 P.M. Friday EST, the calls were worthless and did not exist as they were cancelled and expired.

e) In Perceptive's 12 b-6 Motion to Dismiss, they claim that even if the exercise of the puts on the 2,050,000 shares was considered to be at 11:59 P.M. Saturday, March 16, 2013, their beneficial ownership was reduced at 11:59 P.M. EST Saturday. This claim is false. The exercise of puts by an owner of the puts merely creates a sale without designation as to what shares are sold. It also does not designate what person (s) are assigned the exercise of the puts. The sale, which is essentially a "short sale" gives discretion to the exercising put holder to borrow shares for delivery to the assigned buyer of the stock, thereby completing the creation of the short sale.

The exercise of the puts also allows the person exercising the puts the discretion to buy stock after the exercise of the puts for timely delivery to the assigned buyer. It also allows the exercising put holder the discretion to timely deliver shares already owned to the assigned buyer after the exercise. The exercising put holder can even "fail to deliver" the shares "sold short". So until March 20, 2013, the exercising put holder has discretion as to what shares and when the shares are delivered. The person who had written the puts and must buy the shares is not even informed of the assignments until Monday morning.

So the exercising put holders (i.e. Perceptive Advisors) had control and discretion until March 20, 2013 as to what shares are to be delivered on March 20, 2013. According to SEC Section 13 d (a) definition of beneficial ownership (below), that means the beneficial ownership in this case is not reduced until the earliest on March 18, 2013 and as late as March 20, 2013.

**§ 240.13d-3 Determination of beneficial owner.**

4

*(a)* For the purposes of sections 13(d) and 13(g) of the Act a beneficial owner of a security includes any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has or shares:

*(1)* Voting power which includes the power to vote, or to direct the voting of, such security; and/or,

*(2)* Investment power which includes the power to dispose, or to direct the disposition of, such security.

Therefore it is impossible for Perceptive Advisors to have reduced their beneficial ownership to below 10% prior to the cancellation or expiration of the out-of-the-money calls.

Thus element 5) has been proven and Summary Judgment should be granted to the Plaintiff on behalf of Repros Pharmaceutical.

*John Olagues*
John Olagues

*Ray Wollney*
Ray Wollney

5

