UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN OLAGUES and RAY WOLLNEY,<br><br>    Plaintiffs,<br><br>        v.<br><br>PERCEPTIVE ADVISERS LLC, JOSEPH EDELMAN, PERCEPTIVE LIFE SCIENCES MASTER FUND, LTD., and REPROS THERAPEUTICS INC.,<br><br>    Defendants. | Case No. 5:15-CV-01190-AJN-SN |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS PERCEPTIVE ADVISERS LLC, JOSEPH EDELMAN AND PERCEPTIVE LIFE SCIENCES MASTER FUND, LTD.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

TANNENBAUM HELPERN
SYRACUSE & HIRSCHTRITT LLP
900 Third Avenue
New York, New York 10022
(212) 508-6700

*Attorneys for Defendants*
*Perceptive Advisers LLC, Joseph Edelman*
*and Perceptive Life Sciences Master Fund, Ltd.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................ 2

I.   THE CALLS WERE NOT CANCELED ON MARCH 15, 2013 ..................................... 2

II.  THE EXERCISE OF THE PUTS MUST HAVE OCCURRED BEFORE THE
     EXPIRATION OF THE CALLS; OTHERWISE, THE PUTS WOULD HAVE
     EXPIRED ............................................................................................................................. 4

III. THE PERCEPTIVE DEFENDANTS' BENEFICIAL OWNERSHIP OF THE
     SHARES TERMINATED WHEN THE PUTS WERE EXERCISED .............................. 6

CONCLUSION ......................................................................................................................... 9

# TABLE OF AUTHORITIES

**Statutes**

17 C.F.R. 242 .................................................................................................................................. 7

OCC Rule 801 ................................................................................................................................ 4

OCC Rule 805 ......................................................................................................................... 3, 4, 5

OCC Rule 1000 .............................................................................................................................. 5

## PRELIMINARY STATEMENT

Plaintiffs attempt to support their Section 16(b)[1] claim in this action by misstating and misinterpreting the rules governing the exercise of options and disregarding applicable SEC regulations. Their arguments are also undermined by the very documents which they annexed to their Complaint.

To establish their claim, Plaintiffs must show that the Perceptive Defendants were statutory insiders of RPRX (by virtue of being greater than 10% holders of the RPRX common stock) both at the time the Calls were written and the time they expired. It is not disputed that the Perceptive Defendants were statutory insiders at the time the Calls were written. However, what is disputed, and what the allegations in the Complaint fail to show, is that the Perceptive Defendants were also statutory insiders when the Calls expired.

In opposition to the Perceptive Defendants' motion,[2] Plaintiffs first contend that the Calls did not expire by their terms on Saturday, March 16, 2013 at 11:59 P.M. EST, but instead were canceled on Friday, March 15, 2013 at 5:30 P.M. EST, prior to the exercise of the RPRX Puts which reduced the Perceptive Defendants' holdings below 10%. Plaintiffs do not – as they could not – cite any legal basis for this position. Nothing in the OCC Rules provides for "deemed" or "automatic" cancelation of options. In fact, the Calls, which were out-of-the-money, expired by their terms on Saturday, March 16, 2013 at 11:59 P.M. EST, *after* the Puts were exercised. Thus, the Perceptive Defendants were not statutory insiders when the Calls expired.

Second, Plaintiffs ignore and do not even address case law and SEC releases cited in the Perceptive Defendants' initial memorandum of law which firmly establish that beneficial

---

[1] Abbreviated terms used herein will be the same as those used in the Defendants' initial memorandum of law in support of the motion to dismiss the Second Amended Complaint ("Def. Mem.").

[2] Page references to Plaintiffs' opposition papers will be designated as "Pl. Opp. at __."

ownership is reduced on the trade date. Instead, they try to stretch the Perceptive Defendants' beneficial ownership beyond the trade date by grossly mischaracterizing the Put exercise as a "short sale." By mischaracterizing the exercise as a short sale, Plaintiffs contend that the exercise did not reduce the Perceptive Defendants' beneficial ownership, because the Perceptive Defendants allegedly could have borrowed or otherwise acquired shares – other than the shares they owned – to make delivery upon settlement of the trade. This argument, though legally irrelevant, is also based on Plaintiffs' misunderstanding of applicable regulations; in this case, the SEC regulation that defines short sales. The exercise of the Puts was not a short sale because, as demonstrated by the very documents which Plaintiffs annexed to their Complaint, the Perceptive Defendants delivered the shares *which they owned when the Puts were exercised* to satisfy the exercise. They did not borrow shares or otherwise acquire other shares for such delivery.

Thus, the Perceptive Defendants ceased being statutory insiders when the Puts were exercised, which occurred before the Calls expired. Since the Plaintiffs were not statutory insiders when the Calls expired, Plaintiffs have failed to state a claim under Section 16(b) and the Second Amended Complaint should be dismissed in its entirety.

## ARGUMENT

### I. THE CALLS WERE NOT CANCELED ON MARCH 15, 2013

As noted above, the Plaintiffs' claim under Section 16(b) requires them to show that the Calls expired prior to the exercise of the Puts. (Def. Mem. at 6-8.) They attempt to meet this burden by arguing that, according to OCC Rules, the Calls were "canceled" on Friday, March 15, 2013 at 5:30 P.M. EST because the Perceptive Defendants did not exercise the Calls on that date. According to the Plaintiffs,

2

> [i]f the existing puts or calls are out-of-the-money after the close of trading on the Friday immediately before Saturday Expiration Date, these puts or calls will be cancelled and will be considered expired at 5:30 P.M. EST Friday, unless special expressions of intention to exercise on Saturday are given to the OCC prior to 5:30 P.M. EST on Friday. These options will be considered to no longer exist after 5:30 Pm>m EST on Friday. It is an absolute certainty that the calls written by Perceptive were cancelled and expired at 5:30 P.M. EST on Friday March 15, 2013.

(Pl. Opp. at 2.) Plaintiffs do not cite any OCC Rule or other authority to support the foregoing statement. In fact, Plaintiffs' explanation is the exact opposite of what the OCC Rules provide. OCC Rule 805, as well as the FINRA Rules pertaining to option exercises, provide for automatic *exercise* of in-the-money options; they do not provide for automatic *cancelation* of out-of-the-money options. (*See* Def. Mem. at 10-11, 14-15.)[3] Under these Rules, in-the-money options will be deemed to be exercised automatically unless the option holder takes affirmative action to instruct the Clearing Member not to exercise the option. Also, if a holder of an out-of-the-money option desires to *exercise* such an option, it must take affirmative action to do so; otherwise, the option will not be exercised, and will automatically expire at 11:59 P.M. on its expiration date. (Def. Mem. at 10-11, 14-15; *see also,* the 2010 OCC Memorandum annexed to the Siciliano Declaration as Ex. G ["OCC Memorandum"] at p. 3, and n. 1.)

As explained in the OCC Memorandum, the OCC and FINRA Rules are sometimes referred to as the "exercise by exception" rules since they provide that certain actions will occur automatically unless affirmative action is taken. (Siciliano Decl., Ex. G.) But, the events that occur automatically under the Rules do not include *cancelation* of an option which is out-of-the-money on the last trading date before expiration. Such automatic cancelation of out-of-the-money options would render the later automatic expiration unnecessary, since options that were

---

[3] The Calls were out-of-the-money at the time of their expiration. (Compl. at 6.)

3

"automatically canceled" would no longer be alive to automatically expire. Nor would it serve any purpose to automatically cancel an option that was scheduled to automatically expire the very next day.

While Plaintiffs correctly note that it is unlikely anyone would exercise options which are out-of-the-money when they are about to expire (Pl. Opp. at 5), the applicable rules simply do not provide, as Plaintiffs suggest, that, because they are out-of-the-money, they are deemed canceled on the last trading date before their expiration date. Rather, as noted above, the options simply expire at their scheduled expiration date and time. Since the Calls expired at their pre-determined expiration time on Saturday, March 16, 2013 at 11:59 P.M. (Def. Mem. at 9), and since such expiration occurred after the Puts were exercised, the Complaint fails to allege a claim under Section 16(b).

## II. THE EXERCISE OF THE PUTS MUST HAVE OCCURRED BEFORE THE EXPIRATION OF THE CALLS; OTHERWISE, THE PUTS WOULD HAVE EXPIRED

Plaintiffs contend that OCC Rule 801 prohibited the Puts from being exercised on March 15, 2013, the date reported on the Form 4 filed by the Perceptive Defendants. (Pl. Opp. at 2.) However, as noted in the Perceptive Defendants' initial memorandum of law (Def. Mem. at 13-14), OCC Rule 801 did not apply to the exercise of the Puts because they were in-the-money and were governed by the exercise-by-exception provisions of Rule 805. Plaintiffs appear to concede that Rule 805 applies (Pl. Opp. at 5-6), but they go on to state that "the puts owned by the Perceptive Defendants were exercised on Saturday at 11:59. P.M. EST," *i.e.*, the exact date and time at which they were schedule to expire. (Pl. Opp. at 6.) As with so many of Plaintiffs'

arguments, the latter point is unsupported by any legal authority and is contradicted by the OCC Rules themselves.[4]

OCC Rule 1000(b)(21) states that options such as the Puts at issue here were scheduled to *expire* on Saturday at 11:59 P.M. EST. (Siciliano Decl., Ex. D) Consequently, Saturday at 11:59 P.M. is the time that the Puts expire, not the time when they are exercised. Obviously, the Puts had to have been exercised before they expired (*i.e.*, before 11:59 P.M. on Saturday) because once they expire they can no longer be exercised. Rule 805(d)(1) makes clear that automatic exercises take place prior to expiration. The rule states that "[e]ach Clearing Member shall be deemed to have properly and irrevocably tendered to the [OCC], immediately *prior to the expiration time for such option contracts on each expiration date,* an exercise notice with respect to . . . (1) each option contract listed in the Clearing Member's Expiration Exercise Report . . . ." (Siciliano Decl., Ex. F.)

Even if OCC Rule 805(d)(1) did not make that point clear, it would remain inescapable that the Puts had to have been exercised before the Calls expired. Since Plaintiffs concede that the Puts were, in fact, exercised (Pl. Opp. at 4), the Puts had to have been exercised before the date and time that they expired, otherwise, they could not have been exercised at all. Since under OCC Rule 1000(b)(21) the Calls expired at the same date and time at which the Puts would have expired (Saturday at 11:59 P.M.) (Siciliano Decl., Ex. D), it follows logically that the Puts must have been exercised before the Calls expired. The Perceptive Defendants made this point in their initial memorandum of law (Def. Mem. at 12-13), and Plaintiffs' failure to even address the point in their opposition papers is a clear acknowledgment that the point completely defeats Plaintiffs'

---

[4] While the point is unnecessary to the resolution of this motion, assuming *arguendo* that the Puts were exercised simultaneously with the expiration of the Calls, we believe that there would be no liability under Section 16(b) since the Perceptive Defendants would no longer beneficially own 10% at that moment.

claim under Section 16(b). As stated in the Perceptive Defendants' initial memorandum of law (Def. Br. at 13), it does not matter, for the purpose of Section 16(b), whether the Puts were exercised one day or one minute before the Calls expired; as long as the exercise occurred before the Calls expired, Plaintiffs have no claim under Section 16(b).[5]

### III. THE PERCEPTIVE DEFENDANTS' BENEFICIAL OWNERSHIP OF THE SHARES TERMINATED WHEN THE PUTS WERE EXERCISED

As stated in the Perceptive Defendants' initial memorandum of law, both the SEC regulations and case law precedent definitively establish that the trade date – in this case, the exercise of the Puts – is the relevant date for the purposes of Section 16(b). (Def. Mem. at 15-16.) Plaintiffs do not dispute or even address these authorities, and these authorities alone necessarily dispose of Plaintiffs' arguments on this point. Instead of addressing these authorities, Plaintiffs seek to distract the Court with legally irrelevant arguments as to why the Perceptive Defendants' beneficial ownership of the shares delivered upon exercise of the Puts somehow continued past the trade date. The Perceptive Defendants address these alternative arguments below, and they also fall flat.

Plaintiffs contend that because the exercise of the Puts constituted a "short position," the Perceptive Defendants' beneficial ownership was not reduced at the time the Puts were exercised since they had the "discretion" to borrow or otherwise purchase other shares to deliver upon the settlement of the trades. (Pl. Opp. at 7.) While, as noted above, the Perceptive Defendants believe that this assertion is legally irrelevant to the resolution of this motion, it is also erroneous

---

[5] Plaintiffs assert that the exercise dates of March 15, 2013 reported on the Form 4 filed by the Perceptive Defendants were "'intentional misstatements' in violation of Title 18 Section 1001." (Pl. Opp. at 1-2.) For the reasons stated in the Perceptive Defendants' initial memorandum of law, it was proper to report the exercise date as March 15, 2013 (Def. Mem at 13-15); also, even if the exercise date reported on the Form 4 was incorrect, that would not affect the outcome of this motion since, as noted in the text above, it does not matter whether the exercise date was March 15 or 16, 2013 because, in any event, the exercise had to have taken place before the Calls expired. Nevertheless, the Perceptive Defendants did not misstate any information on the Form 4, and the Plaintiffs' gratuitous and wholly irrelevant allegations in this regard are entirely unfounded.

6

and is contradicted by SEC rules and by the very documents which are annexed to the Complaint.

Plaintiffs' argument is premised on the assertion that the exercises of the Puts were short sales, but SEC rules establish that they were not. Regulation SHO, 17 C.F.R. 242.200, *et seq.*, promulgated by the SEC under the Securities Exchange Act of 1934, as amended ("Exchange Act"), defines a "short sale" as "[a]ny sale of a security which the seller does not own or any sale which is consummated by the delivery of a security borrowed by, or for the account of, the seller." The RPRX shares which the Perceptive Defendants delivered to satisfy the exercise of the Puts were neither borrowed nor purchased after the exercise. Rather, as shown by the Form 4 filed by the Perceptive Defendants on March 20, 2013 (which is annexed to the Complaint as Ex. 14),[6] the RPRX shares delivered by the Perceptive Defendants to satisfy the exercise were owned by the Perceptive Defendants *when the Puts were exercised.* The Form 4 (Table I, column 5) reflects that immediately prior to the exercise of the Puts, the Perceptive Defendants beneficially owned 2,862,560 shares of RPRX securities. This number is also confirmed by Plaintiffs in their opposition papers. (Pl. Opp. at 8.)[7] The Form 4 also reflects that, as each of the Puts was exercised (as reported on Table II of the Form), the Perceptive Defendants' beneficial ownership of RPRX securities (as reported on column 5 of Table I of the Form 4) was reduced, until the final amount of their holdings was reduced to 812,560 shares, or 4.35% of the outstanding shares (as reported on the Schedule 13G/A annexed to the Complaint as Ex.15). These entries on the Form 4 clearly show that the shares owned by the Perceptive Defendants *at the time of the*

---

[6] A clearer copy of the Form 4 is annexed to the Siciliano Declaration as Ex. A.

[7] The number of shares reported on the first line of column 5 of Table I of the Form 4 reflects that 2,762,560 were beneficially owned following the disposition of 100,000 shares (as a result of the exercise of 1,000 Puts, each Put reflecting the right to sell 100 shares [*see* Pl. Opp. at 8]. Thus, before the first Put was exercised, the total number of shares owned was 2,862,560 shares.

*exercise of the Puts* were the shares used to satisfy the exercise, and as a result, their beneficial ownership was reduced at the time of exercise, not at a later date.

Plaintiffs cite interpretive guidance from the Staff of the SEC's Division of Corporation Finance, denoted as "Question 104.01." (Pl. Opp. at 7.) This guidance is in the form of an FAQ and addresses whether a short sale results in a change in beneficial ownership. It merely states that a short sale will not change beneficial ownership. Clearly, if a person sells short by selling "borrowed" shares, that transaction alone would have no effect on beneficial ownership, since the person did not dispose of any of their own shares held long. Thus, for example, if a person owns 100 shares, and sells short 50 shares by selling 50 "borrowed" shares in the open market, that "short sale" transaction would not impact their beneficial ownership, since the person still beneficially owns 100 shares before and after the short sale, as the SEC guidance concludes. That is not what happened here, as explained above. Here, the Perceptive Defendants sold 2,049,000 shares as a result of the exercise of the Puts,[8] and delivered the equivalent number of shares that they held long to settle those exercises, as reported by the Perceptive Defendants on their Schedule 13G/A annexed to the Complaint as Ex.15.

In sum, the transactions reported on the Form 4 clearly demonstrate that the Perceptive Defendants did not borrow on or otherwise acquire additional shares to cover the exercise of the Puts, and, consequently, the exercise of the Puts was not a "short position." Rather, it was a trade providing for the sale of RPRX shares owned by the Perceptive Defendants, and, as a result of the trade, the Perceptive Defendants' beneficial ownership of RPRX's outstanding shares fell

---

[8] Form 4, Table I, col. 5 (Siciliano Decl., Ex. A). The transactions on this table reflects that as a result of the exercise of the Puts, the Perceptive Defendants' beneficial ownership of RPRX fell from 2,862,000 shares (before the first exercise) to 812,560 shares (after the last exercise). The Put exercises are reflected by transaction code "x." A list of transactions codes for the Form 4 is annexed as Exhibit A to the Supplemental Declaration of Ralph A. Siciliano, dated January 13, 2016.

below 10% at the time of the exercise. Since the exercise of the Puts occurred before the Calls expired, Plaintiffs have failed to state a claim under Section 16(b). [9]

## CONCLUSION

For the foregoing reasons, and for those set forth in the Perceptive Defendants' initial memorandum of law, the Perceptive Defendants respectfully request that this Court dismiss Plaintiffs' Second Amended Complaint in its entirety.

Dated: New York, New York  
January 13, 2016

TANNENBAUM HELPERN SYRACUSE  
& HIRSCHTRITT LLP

By:   /s/ Ralph A. Siciliano  
      Ralph A. Siciliano

900 Third Avenue  
New York, New York 10022  
Phone No. (212) 508-6700  
*Attorneys for Defendants*  
*Perceptive Advisers LLC,*  
*Joseph Edelman and Perceptive*  
*Life Sciences Master Fund Ltd.*

---

[9] Plaintiffs' allegations of violations Rule 16c-4, 17 C.F.R. §240.16c-4, promulgated under the Exchange Act, and their allegations concerning transactions in the securities of Aegerion Pharmaceuticals, Inc. (Pl. Opp. at 8) have no relevance to the Plaintiffs' claims in this action and it is respectfully submitted that they should be ignored. The Perceptive Defendants also deny that any such violations occurred.