JOHN OLAGUES
413 Sauve Rd
River Ridge LA. 70123
504-305-4071
olagues@gmail.com

2016 FEB -2 AM 9:55 RECEIVED SDNY PRO SE OFFICE

Pro Se Plaintiff,          Civil Case No.: 1:15-CV- 1190 AJN-SN

Letter Request for Discovery Described in the attached letter with Exhibit 1 and 2

v.

Perceptive Advisors, Joseph Edelman
Repros et al
           Defendants

Attached is the Letter to Judge Nathan Requesting Discovery written Jan 15, 2016. to be filed into this court.

Respectfully Submitted

John Olagues

John Olagues
413 Sauve Rd.
River Ridge LA. 70123
olagues@gmail.com
504-305-4071



January 15, 2016

Hon. Alison J. Nathan
U.S. District Judge
U.S. District Court for the
Southern district of N.Y.
Thurgood Marshall
United States Courthouse, Rm. 906
40 Foley Square
New York, N.Y. 10007

Request to approve discovery pursuant to the Motion for Summary Judgment under FRCP 56 in case Olagues and Wollney v. Perceptive Advisors et al, 15 cv 1190 AJN.

Dear Judge Nathan:

The plaintiffs here requests that this court delay the scheduled oral hearing on the FRCP 12 b-6 motion to dismiss filed by attorney for the defendants Perceptive Advisors et al. in order to allow discovery of factual information that clearly refutes the assertions that defendants made which challenge the facts as stated in Plaintiffs claims.

Firstly, the FRCP 12 b 6 motion filed by defendants challenge the facts asserted by Plaintiffs and supported by documents filed with Plaintiffs' Petition for Judicial notice in their initial and amended complaints. Of course, the defendants are not allowed to challenge the facts asserted by Plaintiffs in the complaints via 12 b-6 Motions, especially ones that are clearly supported by evidence and law.

For example: defendants claims that defendants exercised their puts on the Friday March 15, 2013 when the expiration dates of the puts was on Saturday March 16, 2013. Never in the history of exchange traded puts or calls were puts or calls exercised on the Friday, the day before expiration date of Saturday. Yet the defendants are claiming to be the first ever and are refuting the Plaintiffs' claim that the puts were exercised at 11:59 EST on Saturday, the same as millions of puts and calls were over the 42 years prior to March 15, 2013.

1

This exercise of in-the-money options on expiration Saturday is confirmed by Perceptive Advisors' own reported exercise of 200,000 options on June 15, 2013 in Aegerion Pharmaceuticals Inc which was Saturday expiration. OCC Rule 805 was in force then as well as rule 801. See attached.

Secondly: never in the history of exchange traded puts (as the ones at issue here are) did the exercise of puts require the "beneficial interest" of the person exercising the puts to be reduced on the day of the exercise. The person who owned stock (and here it was over 10% of the outstanding shares) and exercised the puts, had the power to dispose of the shares owned until he delivers the prior owned shares. He could have borrowed the shares for deliver to the person assigned the shares and kept the shares owned prior thereby continue to have the power to dispose the shares or to direct the disposition of the shares. He could have bought shares for cash on Monday or Tuesday and delivered those shares. He could have even failed to deliver shares timely after the exercise on of the puts at 11:59 PM EST.

Yet Defendants claim to be the first persons in history to be required, by the exercise of exchange traded puts, to dispose immediately after exercise the stock held prior to the exercise. Below is the definition of "beneficial ownership" for 16 b purposes.

§ 240.13d-3 Determination of beneficial owner.

**(a)** For the purposes of sections 13(d) and 13(g) of the Act a beneficial owner of a security includes any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has or shares:

**(1)** Voting power which includes the power to vote, or to direct the voting of, such security; and/or,

**(2)** Investment power which includes **the power to dispose, or to direct the disposition of, such security.**

Thirdly; almost every exchange traded call in history of exchange traded calls, that were out-of-the-money (as were those that were written by Perceptive Advisors) on the close of trading Friday were not exercised at all. A very few ( perhaps 1 in 1000) were exercised on Saturday by special instructions to the Options Clearly Corporation given before Friday at 5:30 P.M EST.

The calls at issuer were out-of-the-money and no instruction to exercise them were given ever. The calls at issue here were cancelled on Friday Mar 15, 2013 at 5:30 P.M. EST, since after 5:30 P.M. EST no instructions could be given to the OCC to exercise the calls.

2

SEC rule 16b-6(d) is the rule that was violated and this complaint is based on that violation. See below the rule:

**(d)** Upon **cancellation** or expiration of an option within six months of the writing of the option, any profit derived from writing the option shall be recoverable under section 16(b) of the Act. The profit shall not exceed the premium received for writing the option.

Even if the expiration date was Saturday, the calls were cancelled at 5:30 P.M. EST on Friday.
Every call in history that was out-of-the-money at the close of trading on Friday, where no special instructions were given prior to 5:30 P.M.EST to exercise the calls at 11:59 Saturday(as is the case here) was cancelled at 5:30 P.m. EST Friday.

Every factual claim above and every factual claim that was made in Plaintiffs' complaint can be sworn to under oath by attorneys at the OCC and successful options market makers and other persons.

Thus in summary, the 12 b 6 motion should not be allowed in any form as it questions clear, and irrefutable facts and is improper under FRCP. It is merely an attempt to question facts without discovery.

Thus I request discovery before the oral argument on the 12 b-6 motion.

Respectfully submitted.

*John Olagues*
John Olagues

3

SEC Form 4

**FORM 4**

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934 or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Estimated average burden hours per response: | 0.5 |

X Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

| 1. Name and Address of Reporting Person* <br> PERCEPTIVE ADVISORS LLC | 2. Issuer Name and Ticker or Trading Symbol <br> Aegerion Pharmaceuticals, Inc. [ AEGR ] | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) <br> Director    X   10% Owner <br> Officer (give title below)    Other (specify below) |
|---|---|---|
| (Last) (First) (Middle) <br> 499 PARK AVENUE <br> 25TH FLOOR | 3. Date of Earliest Transaction (Month/Day/Year) <br> 06/15/2013 | |
| (Street) <br> NEW YORK   NY    10022 | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) <br> Form filed by One Reporting Person <br> X   Form filed by More than One Reporting Person |
| (City) (State) (Zip) | | |

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 06/15/2013 | | X | | 100,000 | A | $25 | 3,473,426 | I | See Footnotes (1) (2) (6) |
| Common Stock | 06/15/2013 | | X | | 100,000 | A | $25 | 3,573,426 | I | See Footnotes (1) (3) (6) |
| Common Stock | 09/05/2013 | | S | | 700,000 | D | $89.2 | 2,873,426 | I | See Footnotes (1) (4) (6) |
| Common Stock | 09/05/2013 | | S | | 50,000 | D | $89.2 | 2,823,426 | I | See Footnotes (1) (5) (6) |

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Call option (right to buy) | $25 | 06/15/2013 | | X | | 1,000 | | 06/15/2013 | 06/15/2013 | Common Stock | 100,000 | $0 | 1,000 | I | See Footnotes (1) (2) (6) |
| Call option (right to buy) | $25 | 06/15/2013 | | X | | 1,000 | | 06/15/2013 | 06/15/2013 | Common Stock | 100,000 | $0 | 0 | I | See Footnotes (1) (3) (6) |

| 1. Name and Address of Reporting Person* <br> PERCEPTIVE ADVISORS LLC |
|---|
| (Last) (First) (Middle) <br> 499 PARK AVENUE <br> 25TH FLOOR |
| (Street) |

| NEW YORK | NY | 10022 |
|---|---|---|
| (City) | (State) | (Zip) |

**1. Name and Address of Reporting Person**[*]
EDELMAN JOSEPH

| (Last) | (First) | (Middle) |
|---|---|---|
| C/O PERCEPTIVE ADVISORS LLC | | |
| 499 PARK AVENUE, 25TH FLOOR | | |

| (Street) | | |
|---|---|---|
| NEW YORK | NY | 10022 |
| (City) | (State) | (Zip) |

**1. Name and Address of Reporting Person**[*]
PERCEPTIVE LIFE SCIENCES MASTER FUND LTD

| (Last) | (First) | (Middle) |
|---|---|---|
| C/O PERCEPTIVE ADVISORS LLC | | |
| 499 PARK AVENUE, 25TH FLOOR | | |

| (Street) | | |
|---|---|---|
| NEW YORK | NY | 10022 |
| (City) | (State) | (Zip) |

**Explanation of Responses:**

1. This Form 4 is being filed by Perceptive Life Sciences Master Fund Ltd. (the "Master Fund"), Perceptive Advisors LLC (the "Advisor") and Joseph Edelman. The Advisor serves as investment manager to the Master Fund and to a managed account (the "Managed Account") for BioEdelman LLC, an entity directly owned by Mr. Edelman. Mr. Edelman is the managing member of the Advisor.

2. This transaction reflects the exercise of an in-the-money option by the Advisor on behalf of the Master Fund.

3. This transaction reflects the exercise of an in-the-money option by the Advisor on behalf of the Managed Account.

4. This transaction reflects the sale of securities by the Advisor on behalf of the Master Fund.

5. This transaction reflects the sale of securities by the Advisor on behalf of the Managed Account.

6. This amount reflects the total amount of securities held by the Master Fund and the Managed Account immediately following the transaction requiring the filing of this statement. In accordance with Instruction 5(b)(iv) of Form 4, the entire amount of the Issuer's securities held by the Master Fund and the Managed Account is reported herein. Each of Mr. Edelman and the Advisor disclaims, for purposes of Section 16 of the Securities Exchange Act of 1934, beneficial ownership of such securities, except to the extent of his/its indirect pecuniary interest therein, and this report shall not be deemed an admission that Mr. Edelman or the Advisor is the beneficial owner of such securities for purposes of Section 16 or for any other purposes.

/s/ Joseph Edelman, managing member of Perceptive Advisors LLC      09/09/2013

\*\* Signature of Reporting Person      Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

\* If the form is filed by more than one reporting person, see Instruction 4 (b)(v).

\*\* Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

*Amended November 26, 1991, June 28, 1993, March 19, 2015*

(b) If the funds in the Proprietary and Non-Proprietary Liquidating Accounts, when applied to the full extent permitted in accordance with the applicable Participating CCO Agreement, are insufficient to offset the aggregate of the liquidating deficits in the sets of X-M accounts, the shortfall shall be allocated between or among the Corporation and the Participating CCOs pursuant to the applicable Participating CCO Agreement. In the event that, as a result of any such allocation, the Corporation incurs a loss arising from the liquidation of Contracts cleared by a Carrying CCO, the Corporation may demand immediate payment of the amount of such loss from the OCC Clearing Member and, if such payment is not made promptly, the Corporation may, if it has not already done so, suspend such Clearing Member pursuant to Rule 1102.
*Amended November 26, 1991, June 28, 1993.*
*Adopted September 26, 1989.*

## Chapter VIII - Exercise and Assignment

### RULE 801 - Exercise of Options

Issued and unexpired option contracts may, subject to Exchange Rules and the By-Laws, be exercised as follows:
*Amended January 12, 1977.*

(a) A Clearing Member desiring to exercise an American option contract on any business day other than its expiration date shall submit exercise notices to the Corporation on such business day through electronic means prescribed by the Corporation for that purpose within such timeframe as the Corporation shall prescribe; provided that no option contract expiring on a day that is not a business day may be exercised on the business day immediately preceding its expiration date. The Corporation may change such timeframes upon not less than thirty days' prior written notice to affected Clearing Members. Every submission of an exercise notice in accordance herewith shall become irrevocable at the applicable deadline specified by the Corporation on the date of submission. No Clearing Member shall revoke or modify any exercise notice after the applicable deadline. Each Clearing Member that files an exercise notice after the applicable deadline shall prepare and preserve, for not less than three years, a memorandum describing in reasonable detail the error that gave rise to late filing.

*Amended January 12, 1977; August 18, 1977, October 10, 1980, September 20, 1982, February, 1996; March 6, 2006; June 17, 2013; September 25, 2013*

(b) Any expiring American option contract may be exercised on its expiration date in accordance with Rule 805. Any capped or European option contract may be exercised (other than automatically exercised in the case of a capped option) only on its expiration date in accordance with Rule 805. Any binary options that meet the exercise parameters set forth in Rule 1501 will be automatically exercised in accordance with that rule. Notwithstanding the foregoing, any expiring flexibly structured index option contract, quarterly index option contract, monthly index option contract, weekly index option contract, short term index option contract or OTC index option contract that meets the exercise parameters set forth in Rule 1804(c) will be automatically exercised on its expiration date in accordance with that Rule. No option contract expiring on a day that is not a business day may be exercised on the business day immediately preceding its expiration date.
*Adopted January 12, 1977; amended August 18, 1977, February 22 and 23, 1993, November 1, 1994, October 18, 1995, October 25, 1996; April 16, 2004; July 12, 2005; June 23, 2006; June 6, 2007; August 20, 2007; November 30, 2007; March 25, 2009; November 9, 2010; December 14, 2012; June 17, 2013*

(c) Option contracts may be exercised only in a unit of trading or an integral multiple thereof. Exercise notices may be filed in respect of opening purchase transactions which have not yet been accepted by the Corporation, and shall be assigned by the Corporation at the same time and in the same manner as exercise notices filed on the same business day in respect of issued option contracts, provided that any such exercise notice shall be deemed to be null and void and of no force or effect if the opening purchase transaction in respect of which it was filed is not accepted by the Corporation on the business day immediately following the date on which such exercise notice was filed.
*Adopted January 12, 1977; amended June 30, 1977.*

(d) Notwithstanding the foregoing provisions of this Rule, and except as otherwise provided in this paragraph (d), the Executive Chairman, the Management Vice Chairman, or the President of the Corporation, or any delegate of such officer, may in the sole discretion of such person permit a Clearing Member to file any exercise notice after an applicable deadline prescribed pursuant to paragraph (a) of this Rule, solely for the purpose of correcting a bona fide error on the part of the Clearing Member or a customer, subject to the following conditions:
*Amended July 9, 1991, November 24, 1993, December 10, 1997, May 16, 2002, May 23, 2003; March 6, 2006; March 25, 2009; June 17, 2013; March 6, 2014*

> (1) The Clearing Member shall request permission to file such exercise notice at a time early enough, in the judgment of the authorized individual acting on the request, to allow the Corporation to complete its nightly processing in a reasonably timely manner notwithstanding any delay resulting from the granting of the request.
> *Amended July 9, 1991; June 17, 2013*
>
> (2) The Clearing Member shall be liable to the Corporation for a late filing fee of $75,000 per line item listed on any exercise notice accepted for filing after the start of critical processing, and shall be informed of such fee at the time a request to file any exercise notice subject to such fee is submitted to the Corporation. Fifty percent of any late filing fee shall be distributed to the assigned Clearing Member or pro-rata to the assigned Clearing Members.
> *Adopted July 9, 1991. Amended July 9, 1991; May 22, 2002.*
>
> The Corporation will not accept any late exercise request received after 6:30 A.M. Central Time (7:30 A.M. Eastern Time). Clearing Members that have been assigned a late exercise notice shall be notified of the assignment by 8:00 A.M. Central Time (9:00 A.M. Eastern Time). Notwithstanding any other provision of the Rules or By-Laws, the Corporation will not accept any request to revoke or modify a previously submitted exercise notice.
> *Adopted July 9, 1991, Amended February 7, 1996, May 22, 2003; June 17, 2013*
>
> (3) The Clearing Member shall deliver to the Corporation, within two business days after submitting a filing pursuant to this paragraph (d), a memorandum describing in reasonable detail the error that gave rise to such action. Every memorandum shall be reviewed by the President or any other officer of the Corporation designated by the President, and, in his or her sole discretion such officer shall make a submission for remission of any late filing fee pursuant to subparagraph (d)(5).
> *Amended May 16, 2002; March 6, 2006; March 20, 2009; June 17, 2013*
>
> (4) The filing of an exercise notice pursuant to this paragraph (d) may be deemed a violation of the procedures of the Corporation, and may be subject to disciplinary action pursuant to Chapter XII of the Rules.
> *Amended March 6, 2006; June 17, 2013*
>
> (5) The Corporation may remit, in whole or in part, any late filing fee imposed pursuant to subparagraph (d)(2), if the Executive Chairman, Management Vice Chairman or the President finds that the filing giving rise to the fee was necessitated by circumstances

beyond the reasonable control of the Clearing Member and its customer, or that remission is otherwise equitable in the circumstances.
*Amended March 6, 2006; June 17, 2013; March 6, 2014*

(6) An exercise notice accepted by the Corporation pursuant to this paragraph (d) after Midnight shall be deemed for all purposes to have been properly submitted to the Corporation on the preceding day.
*Adopted July 9, 1991, amended February 7, 1996.*
*Amended June 1, 1975; August 6, 1981; September 20, 1982; November 24, 1982; August 28, 1985; March 12, 1986; May 6, 1987; July 22, 1987; August 21, 1987; March 6, 2006.*

Filing of exercise notices after the applicable deadline specified by the Corporation shall not be permitted under any circumstances in respect of (i) futures options of such classes, or traded on such futures market(s), as may be designated by the Corporation and specified in its procedures or (ii) any exercise notice that the Corporation has determined not to be eligible for late processing.
*Adopted March 25, 2009. Amended June 17, 2013, September 25, 2013*

### ...Interpretations and Policies:

**.01** The Corporation may permit one or more Clearing Members to tender, revoke, or modify exercise notices by electronic data entry, provided that electronic data entry procedures shall not apply to exercises governed by Rule 805. See Rule 205 with respect to the extension of cut-off times in the event of power failures, equipment malfunctions, and other unusual or unforeseen conditions.
*Adopted May 22, 1984. Amended July 1, 2002.*

**.02** The Corporation may designate earlier cut-off times than those specified in Rule 801 when the Exchanges announce an early close. The Corporation shall give Clearing Members such notice of the designation of any such earlier cut-off time, including any change in the cut-off times specified in Rule 801(d)(2), as the Corporation deems practical under the circumstances.
*Adopted November 19, 1999. Amended March 6, 2006.*

**.03** The Corporation may make available to each Clearing Member, during a business day, updated information as to exercise notices submitted by such Clearing Member. Such updated information on exercises submitted by a Clearing Member shall be considered provisional and informational only and is subject to revision at any time. Only delivery advices and exercise and assignment reports (as the case may be) may be relied upon as definitively reflecting exercise notices accepted by the Corporation.
*Adopted October 28, 2002.*

**.04** With respect to any Market-Maker account, the Corporation shall process sell transactions in respect of American option contracts prior to exercises in respect of such contracts; provided that, for the purposes of this Interpretation and Policy, JBO Participants' accounts shall not be considered Market-Maker accounts until such time as the Corporation on not less than 30 days' notice to Clearing Members is able to identify, on a subaccount basis, the transactions of a JBO Participant within JBO Participant accounts, in which case JBO Participant accounts shall be considered Market-Maker accounts.
*Adopted October 27, 2014*

## RULE 802 - Acceptance of Exercise Notice

An exercise notice properly tendered to the Corporation in accordance with Rule 801 or deemed to have been properly tendered to the Corporation in accordance with Rule 805 shall be accepted

by the Corporation on the date on which such notice was, or is deemed to have been, tendered.
*Amended June 1, 1975; January 12, 1977; March 12, 1986; July 9, 1991, October 18, 1995.*

## RULE 803 - Assignment of Exercise Notices to Clearing Members

Exercise notices accepted by the Corporation shall be assigned in accordance with the Corporation's procedures to Clearing Members with open short positions in the series of options involved, provided that:
*Amended October 29, 1976; April 17, 1980, November 2, 1995.*

(a) the Corporation may assign an exercise notice to a Clearing Member in respect of an opening writing transaction made by such Clearing Member on the day on which the exercise notice was accepted by the Corporation; and
*Adopted April 17, 1980.*

(b) the Corporation shall not assign an exercise notice to a Clearing Member in respect of any open short position after the Corporation has received confirmed trade information for a closing purchase transaction which, upon acceptance by the Corporation, will eliminate such short position, unless and until such closing purchase transaction is rejected by the Corporation.
*Adopted April 17, 1980. Amended October 28, 2002; December 14, 2012*

Subject to the provisions of the By-Laws, exercise notices accepted by the Corporation shall be assigned at or before 8:00 A.M. Central Time (9:00 A.M. Eastern Time) on the following business day. Assignments shall be dated and effective as of the date the applicable exercise notices were accepted by the Corporation. A Clearing Member to which an exercise notice is assigned shall be notified thereof as soon as practicable after such notice is assigned by the Corporation, and, if applicable, a Clearing Member submitting an exercise notice shall (subject to the provisions of Rule 901) be notified of the identity of the Assigned Clearing Member, through the transmission of Delivery Advices or as soon as practicable after such notice is assigned by the Corporation.
*Amended March 10, 1976; January 29, 1991, July 9, 1991; October 28, 2002; March 16, 2004; December 14, 2012*

### ...Interpretations and Policies:

**.01** Under the Corporation's assignment procedures the Corporation will assign exercise notices to Clearing Members in respect of positions in a particular account of such Clearing Member or, in the case of an account divided into sub-accounts, a particular sub-account. In the case of short positions in OTC options in a Clearing Member's securities customers' account for which the Corporation has a customer ID, the Corporation will assign exercise notices to specific customer IDs.
*Adopted September 28, 2007; Amended December 14, 2012*

## RULE 804 - Allocation of Exercises

Except as provided in the last sentence of this Rule 804, each Clearing Member shall establish fixed procedures for the allocation of exercises assigned in respect of short positions in the Clearing Member's accounts to specific option contracts included in such short positions. The allocation shall be made in accordance with the requirements set forth in Exchange Rules and any applicable rules of any self-regulatory organization of which the Clearing Member is a member. During the term of any restriction imposed on a Clearing Member pursuant to Rule 305, the Executive Chairman, the Management Vice Chairman, or the President may require the Clearing Member to report to the Corporation, not later than 8:00 A.M. Central Time (9:00 A.M. Eastern Time) on each business day, the name and address of each writer to whom the Clearing Member allocated an exercise assigned to the Clearing Member on the preceding business day. Such reports shall indicate, for each writer, the series of options for which an exercise was allocated and the number of contracts included in the allocation, and shall state whether any

specific deposit or escrow deposit has been made in respect of such writer's short position in such series of options. The foregoing provisions of this Rule 804 shall not apply to the allocation of exercises of OTC options; and in the case of short positions in OTC options in respect of which the Corporation has assigned exercises to a particular customer ID, the Clearing Member shall allocate the exercise only to the customer associated with such customer ID.
*Amended January 28, 1976; September 11, 1979; April 17, 1980, October 28, 1991, November 2, 1995, December 10, 1997; December 14, 2012; March 6, 2014*

*...Interpretations and Policies:*

**.01** The procedures established by a Clearing Member pursuant to this Rule must provide, in the case of an account divided into sub-accounts, for the allocation of exercises to specific option contracts included in short positions maintained in the sub-account to which the exercise notice was assigned pursuant to Rule 803.
*Adopted September 28, 2007.*

## RULE 805 - Expiration Exercise Procedure

(a) At or before such time and date as the Corporation shall from time to time specify with respect to each expiration date, the Corporation shall make available to each Clearing Member an Expiration Exercise Report.
*Amended January 29, 1991, October 18, 1995; June 17, 2013*

(b) Upon retrieving an Expiration Exercise Report, each Clearing Member may submit exercise instructions in response to such report through electronic means prescribed by the Corporation for that purpose. Such instructions shall indicate, with respect to each series of options listed for each of the Clearing Member's accounts, the number of option contracts of that series, if any, to be exercised for that account. If no option contracts of a particular series are to be exercised for a particular account, the Clearing Member may so indicate opposite the title of that series. Each Clearing Member desiring to submit instructions in accordance with the preceding provisions of this subparagraph (b) shall submit such instructions to the Corporation before such time and date as the Corporation shall from time to time specify with respect to an expiration date. Instructions to exercise given pursuant to this subparagraph (b) shall become irrevocable at such time and date with respect to each expiration date as the Corporation shall from time to time specify.
*Amended October 18, 1995; December 14, 2012; June 17, 2013*

(c) If, after the deadline prescribed pursuant to subparagraph (b) for the submission of exercise instructions in response to Expiration Exercise Reports, but prior to the expiration time for such option contracts on the expiration date, a Clearing Member desires to exercise option contracts expiring on such expiration date in addition to those which the Clearing Member has previously instructed the Corporation to exercise, the Clearing Member may do so by tendering to the Corporation, prior to such expiration time, a written exercise notice on such form as the Corporation shall prescribe, provided that (i) the Corporation may designate in its procedures classes of futures options with respect to which no late exercise notices will be accepted; and (ii) the Corporation will not accept any late exercise notices with respect to OTC options.
*Amended October 18, 1995, November 2, 1995; March 25, 2009; December 14, 2012*

(d) Each Clearing Member shall be deemed to have properly and irrevocably tendered to the Corporation, immediately prior to the expiration time for such option contracts on each expiration date, an exercise notice with respect to:
*Amended October 18, 1995, November 2, 1995*

    (1) each option contract listed in the Clearing Member's Expiration Exercise Report that the Clearing Member has instructed the Corporation to exercise in

accordance with subparagraph (b) or (c), and
*Amended October 18, 1995.*

(2) every option contract of each series listed in the Clearing Member's Expiration Exercise Report that has an exercise price below (in the case of a call) or above (in the case of a put) the closing price of the underlying security by $0.01 or more, unless the Clearing Member shall have duly instructed the Corporation, in accordance with subparagraph (b), to exercise none, or fewer than all, of the option contracts of such series carried in such account, provided that in the case of options with an exercise price expressed as a multiple of the per-unit price, in making the above calculations such multiple shall be applied to the closing price. If a Clearing Member desires that any such option contract not be exercised, it shall be the responsibility of the Clearing Member to give appropriate instructions to the Corporation in accordance with subparagraph (b).
*Amended October 18, 1995; September 1, 2004; September 26, 2006;January 16, 2008; January 14, 2010.*

(e) It shall be the duty of each Clearing Member to review each Expiration Exercise Report against the Clearing Member's own position records and to verify the accuracy of the closing prices reflected in such report. If a Clearing Member discovers any error or omission in any Expiration Exercise Report, the Clearing Member shall immediately notify the Corporation thereof and cooperate with the Corporation in reconciling any discrepancies. If a Clearing Member's position records reflect expiring option contracts not listed in its Expiration Exercise Report, and the Clearing Member and the Corporation are unable to reconcile their respective position records before the deadline for the submission of exercise instructions prescribed in subparagraph (b), the Clearing Member may exercise any option contracts not listed in its Expiration Exercise Report (to the extent that such option contracts are subsequently determined to have existed in the Clearing Member's accounts) by tendering written exercise notices with respect to such option contracts in accordance with subparagraph (c). The Corporation shall have no liability to any Clearing Member or to any other person in respect of any loss or expense resulting from the exercise or non-exercise of any option contract due to any error or omission (whether relating to the inclusion of option contracts, the determination of closing prices, the making of computations or otherwise) in any Expiration Exercise Report.
*Amended October 18, 1995.*

(f) With respect to any expiration date, the Corporation may in its discretion extend any or all of the times and dates prescribed pursuant to subparagraphs (a) and (b). If unusual or unforeseen conditions (including but not limited to power failures or equipment malfunctions) prevent the Corporation from making Expiration Exercise Reports available to Clearing Members on a timely basis, or Clearing Members from submitting on-line responses to such reports, prior to any applicable deadline, the Corporation, in its discretion, may prescribe such alternative procedures for exercising expiring options period as the Corporation deems reasonable, practicable and equitable under the circumstances. Notwithstanding the foregoing, in no event shall the deadline for submitting exercise instructions be extended beyond the expiration time for such option contracts except pursuant to Article VI, Section 18 of the By-Laws.
*Amended January 29, 1991, October 18, 1995, November 2, 1995; June 17, 2013*

(g) In the event that a Clearing Member tenders an exercise notice pursuant to subparagraph (c) (a "supplementary exercise notice") after the deadline prescribed pursuant to subparagraph (b) for the submission of exercise instructions in response to Expiration Exercise Reports, such Clearing Member shall be liable to the Corporation for a late filing fee of $75,000 per line item for any supplementary exercise notice tendered after the commencement of critical expiration processing and shall be informed of such fee at the time the supplementary exercise notice is tendered.
*Amended October 18, 1995, May 26, 1999; December 3, 2008.*

The tender of a supplementary exercise notice may also be deemed to be a violation of the procedures of the Corporation, and may be subject to disciplinary action pursuant to Chapter XII

of the Rules.
*Adopted May 26, 1999.*

(h) Notwithstanding the provisions of subparagraph (g), exercise instructions properly given in a supplementary exercise notice shall be valid and effective provided that such exercise notice is tendered prior to the expiration time for the option contracts sought to be exercised and in accordance with the procedures prescribed by the Corporation from time to time. Any tender of a supplementary exercise notice not made in accordance with such prescribed procedures shall be deemed null and void. If a Clearing Member files an exercise notice after the deadline prescribed pursuant to subparagraph (b) for the submission of exercise instructions in response to Expiration Exercise Reports, the Clearing Member shall be obligated to advise the Corporation in writing of the specific reasons therefor within two business days thereafter.
*Adopted October 18, 1995, amended November 2, 1995, May 26, 1999.*

(i) The Corporation may remit, in whole or in part, any filing fee imposed pursuant to subparagraph (g), if the Executive Chairman, Management Vice Chairman or President finds that the tendering of the supplementary exercise notice giving rise to the fee was necessitated by circumstances beyond the reasonable control of the Clearing Member or its customer, or that remission is otherwise equitable under the circumstances.
*Adopted May 26, 1999. Amended June 17, 2013; March 6, 2014*

(j) The term "closing price", as used with respect to an underlying security in this Rule 805, means the last reported sale price for the underlying security during regular trading hours (as determined by the Corporation) on the trading day immediately preceding the expiration date, or on the expiration date if the expiration date is a trading day, on such national securities exchange or other domestic securities market as the Corporation shall determine. Notwithstanding the foregoing, if an underlying security was not traded on such market during regular trading hours on the trading day immediately preceding the expiration date, or if the underlying security was traded during regular trading hours on such trading day but the Corporation is unable to obtain a last sale price, the Corporation may, in its discretion, (i) fix a closing price on such basis as it deems appropriate in the circumstances (including, without limitation, using the last sale price during regular trading hours on the most recent trading day for which a last sale price is available) or (ii) suspend the application of subparagraph (d)(2) to option contracts for which that security is an underlying security. During the term of any such suspension, Clearing Members may exercise such option contracts only by giving affirmative exercise instructions in accordance with subparagraph (b) or (c).
*Adopted January 12, 1977.*
*Amended November 7, 1977; September 20, 1982; May 28, 1985; March 12, 1986; October 18, 1995; February 23, 1999; May 26, 1999; August 3, 2001; May 22, 2003; July 12, 2005.*

(m) [Rescinded September 20, 1982.]

### ...Interpretations and Policies:

**.01** When the day immediately preceding a Saturday expiration date is a holiday under Exchange Rules, the Corporation may, upon reasonable notice to Clearing Members, advance the exercise procedures provided for in Rule 805 by 24 hours. In that event:
*Amended October 18, 1995; May 16, 2002.*

> (1) Expiration Exercise Reports will be made available by the Corporation, and Clearing Members will be required to submit exercise instructions in response to such Reports, on the day immediately preceding the expiration date.
> *Amended January 29, 1991, October 18, 1995.*

(2) The provisions of Rule 805 with respect to the irrevocability of exercise instructions (including instructions deemed to have been given pursuant to Rule 805(d)(2)) shall apply notwithstanding the completion of exercise procedures on the day before the expiration date.
*Amended October 18, 1995.*

(3) Clearing Members may tender supplementary exercise notices at any time prior to the expiration time for such option contracts in accordance with Rule 805(c), but subject to the provisions of Rules 805(g) and (h).
*Adopted January 17, 1983, amended October 18, 1995, November 2, 1995.*

**.02** The exercise thresholds provided for in Rule 805(d) and elsewhere in the rules are part of the administrative procedures established by the Corporation to expedite its processing of exercises of expiring options by Clearing Members, and are not intended to dictate to Clearing Members which positions in customers' accounts should or must be exercised.
*Adopted June 14, 1988, amended October 18, 1995.*

**.03** The exercise procedures set forth in Rule 805 shall apply to the exercise of flexibly structured equity options, quarterly equity options, monthly equity options, weekly equity options and short term equity options, except that the time when the Corporation makes an Expiration Exercise Report available pursuant to paragraph (a) of Rule 805, and the time specified by the Corporation as the deadline for the submission of exercise instructions pursuant to paragraph (b) of Rule 805 for such options, may be different from the corresponding times that apply to standard.
*Adopted September 3, 1996. Amended July 12, 2005; June 23, 2006; November 9, 2010.*

**.04** With respect to any Market-Maker account, the Corporation shall process sell transactions in respect of option contracts prior to exercises in respect of such contracts; provided that, for the purposes of this Interpretation and Policy, JBO Participants' accounts shall not be considered Market-Maker accounts until such time as the Corporation on not less than 30 days' notice to Clearing Members is able to identify, on a subaccount basis, the transactions of a JBO Participant within JBO Participants' accounts, in which case JBO Participants' accounts shall be considered Market-Maker accounts.
*Adopted October 27, 2014*

## Rule 806 - Reserved

Reserved.

## RULE 807 - Acceleration of Expiration Date

When a stock option contract is adjusted pursuant to Section 11 of Article VI of the By-Laws to require the delivery upon exercise of a fixed amount of cash, the expiration date of the option contract will ordinarily be accelerated to fall on or shortly after the date on which the conversion of the underlying security to a right to receive cash occurs.
*Adopted June 25, 1998. Amended January 18, 2007; July 18, 2012.*

### ... Interpretations and Policies:

**.01** When option contracts are adjusted to require delivery of a fixed amount of cash and the expiration date is accelerated, the "exercise by exception" threshold for such contracts for purposes of Rule 805(d)(2) shall be $.01 per share.
*Adopted January 18, 2007.*