**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

RECEIVED
SDNY PRO SE OFFICE
2016 MAR -3  AM 9:46

JOHN OLAGUES
413 Sauve Rd
River Ridge LA. 70123
504-305-4071
olagues@gmail.com

RAY WOLLNEY,
8331 Whiskey Preserve Circle # 421
Fort Myers FLA. 33919
239-690-7754
rwollney1@comcast.net

Pro Se
Plaintiffs,

versus

PERCEPTIVE ADVISORS LLC, JOSEPH EDELMAN,
PERCEPTIVE LIFE SCIENCES MASTER FUND LTD.,
  and REPROS THERAPEUTICS  INC.
Defendants

Civil Case No.:  1:15-CV- 1190 AJN-SN
**Affidavit of John Olagues**
**in support of**
**Motion for Summary Judgment**

1) John Olagues affirms that this Affidavit is made by John Olagues, born on April 20, 1945 from his residence in Jefferson Parish Louisiana. In 1970 John graduated from Tulane University with a Bachelor's Degree in Mathematics.

2) I, John Olagues affirm that he was a stockbroker, insurance consultant and investment advisor in New Orleans. In 1976 he became a member of the Pacific Stock Exchange in San Francisco as an Options Market Maker for 5 years. He then became an Options Market Maker on the CBOE in Chicago for 5 years.

3) John Olagues affirms that on those exchanges, he traded more puts and calls and personally  held the largest positions of any other market maker. During those 10 years he trained a team of market makers some of whom were very successful.

1

4) I, John Olagues affirm that, together with Blair Hull, the most famous options trader in the world, he created the first stock options analytical service providing theoretical options pricing to market makers and the general public. It was called Options Research.

5) I, John Olagues affirm that for the years 2004 to 2013 he advised holders of employee stock options and other equity compensation.

6) I, John Olagues affirm that he wrote a book titled "Getting Started in Employee Stock Options" published by Wiley and Sons in 2010, which is the only book that explains how holders of employee stock options can efficiently manage their employee stock options holdings.

7) I, John Olagues affirm that he presently advises prominent law firms in the arena of Section 16 b violations of the Securities Act of 1934 when those violations and prospective violations deal with exchange traded stock options, employee stock options, convertible bonds and warrants.

8) I, John Olagues affirm that he has analysed the SEC Form 4 reports filed by Perceptive Advisors, Joseph Edelman and other defendants in their transactions in options and stock of Repros Therapeutics. Their first transactions reported on the Form 4s were the purchase of shares on 2011-2-24. The first exchange traded options transactions reported on Form 4s were made on 2011-3-03 but reported five months late.

9) I, John Olagues affirm that the last stock purchase transaction was reported on 2012-9-15 on the SEC Form 4. The last call and put transactions were reported on 2013-3-20 signed by Joseph Edelman on 2013-3-19 on the SEC Form 4.

10) I, John Olagues affirm that the SEC Form 4 reported on Wednesday 2013-3-20 was 3 business days after Friday 2013-3-15 (i.e. one day late). That 2013-3-20 filing is attached and mistakenly alleges that 15 different exercises of puts held by Perceptive advisors et al were exercised on 2013-3-15, a Friday immediately prior to the Saturday expiration date. This Form 4 also claims in 15 different entries that 2,050,000 shares of the underlying stock were sold on 2013-3-15, a Friday immediately prior to the Saturday expiration as a result of the alleged exercises of puts on Friday 2013-3-15.

11) I , John Olagues affirm that In my ten years of trading exchange traded stock options as a market maker member on the Pacific Stock Exchange in San Francisco and on the Chicago Board Options Exchange, I have never encountered an exercise of puts on Friday, the day immediately prior to Saturday expiration. My understanding is that Options Clearing Corporation Rule 801 prohibits exercises on the Friday prior to Saturday Expiration Date. There is nothing in OCC Rule 805 that allows an exercise on Friday immediately prior to a

Saturday expiration date. John Olagues affirms that the 15 entries that were reported on March 20, 2013 by Perceptive and Edelman alleging that exercises of puts on Friday March 15, 2013 were intentional misstatements in violation of Title 18 section 1001.

12) I, John Olagues affirm that officials from the Options Clearing Corporation have confirmed to me in emails that no puts can be exercised on the Friday immediately prior to the Saturday expiration date. One official, Mr. Scott Warren, when sent a copy of the Form 4 filed on 2013-3- 20 by Perceptive Advisors et al, told me verbally that there were no puts exercised on Friday 2013-3-15 as alleged by Perceptive Advisors on that Form 4.

13) I , John Olagues affirm that Perceptive advisors et al filed a Form 4 on 2013-3-20 which alleged in 14 different entries that calls on 2,300,000 shares of stock which were substantially out-of-the-money at the close of trading were not exercised and no exercise instructions given before the cut off on Friday 2-13-3015.

14) I, John Olagues affirm that Perceptive Advisors et al, however allege that the calls expired the next day on Saturday 2013-3-16. These out-of-the-money calls could not be exercised after the cut off time on Friday and no intention to exercise could be given after 5:30 P.M. EST. Since no intention to exercise was given prior to the cut off time on Friday, these out-of-the-money calls were worthless and expired and were cancelled on Friday 2-13-3-15 at 5:30 P.M. EST. This cancellation and worthlessness was confirmed by officials of the Options Clearing Corporation to me personally and by experts from brokerage firms which specialize in options trading. Those firm are Optionshouse and OptionsMonster.

15) I , John Olagues affirm that never in my ten years on the PSE and the CBOE did I exercise substantially out-of-the-money calls or witness or was aware of anyone doing so.

16) I , John Olagues affirm that Mr. Siciliano has never given me any evidence or pointed to any rules by the Options Clearing Corporation or any Options exchange that allows the exercise of puts on the Friday prior to Saturday expiration date.

17) I , John Olagues affirm that Mr. Siciliano has never given any facts, or evidence or rules that call options which are out-of-the-money at the close on Friday were not immediately cancelled after the cut off time on Friday at 5:30 P.M EST.

18) I , John Olagues affirm that Mr. Siciliano has never given to me any facts, evidence or rules that the puts were exercised on Friday, 2013-3-15. I, John Olagues affirm that I searched thousands of form 4 filings and could find no exercises of exchange traded put or call options that took place on the Friday immediately before Saturday, other than the Perceptive/Edelman filings on 2013-3-20. I even found an exercise of exchange traded calls on 200,000 shares exercised by Perceptive/Edelman on the Saturday expiration date June 15, 2013 in Aegerion Pharmaceuticals, Inc. not on the Friday before Saturday expiration date. See exhibit 1.

19) I , John Olagues affirm that in my 10 years as an options market maker, whereby I exercised puts in scores of instances, I can not recall ever being required to deliver long stock previously acquired to cover the effective short sale caused by my exercise of puts. In some cases I borrowed stock to complete the delivery. In some cases I bought stock for cash days after the exercise of my puts. In some case I delivered shares when I was short other puts that were exercised and the stock assigned to me.  So the idea that Perceptive Advisors had  no discretion when to sell their previously owned shares after the exercise of puts, is not supported by any facts or rules or law. My Siciliano has not and can not support the idea that the long stock previously acquired was required by the OCC to be delivered to persons who were assigned the stock after the put exercises. See Questions and answers from the OCC exhibit 2.  I, John Olagues affirm that the exercise of the exchange traded put contracts between the Options Clearing Corporation and Perceptive Advisors created the same result as a short sale of stock. It is certain that a person who buys puts is not required to own shares if and when the puts are exercised. It is certain that the exercising put holder is not required to deliver prior owned stock for delivery to the OCC. John Olagues affirms that it is certain that if a exercising put holder does own stock when the puts are exercised, the holder of the stock has discretion to borrow shares for delivery, buy new shares for delivery, or deliver the previously owned shares.

20) I , John Olagues affirm that Mr. Siciliano has threatened me with filing a Motion for Rule 11 Sanctions unless we dismiss this case.

21) I , John Olagues affirm none of Mr Siciliano's factual or legal claims as to the timing of the exercise of the puts are accurate. John Olagues affirms that below are verbatim quotations from the Options Clearing Corporation Rule 801 paragraphs a) and b)  with the blue text used for emphasis.

*(a) A Clearing Member desiring to exercise an American option contract on any business day other than its expiration date shall submit exercise notices to the Corporation on such business day through electronic means prescribed by the Corporation for that purpose within such timeframe as the Corporation shall prescribe; provided that no option contract expiring on a day that is not a business day may be exercised on the business day immediately preceding its expiration date.*

*(b) ) Any expiring American option contract may be exercised on its expiration date in accordance with Rule 805.*
*No option contract expiring on a day that is not a business day may be exercised on the business day immediately preceding its expiration date.*

4

John Olagues affirms that March 16, 2013 was a Saturday and was not a business day. Olagues affirms that the business day immediately prior to the Saturday expiration date was Friday March 15, 2013, which was a business day.

John Olagues affirms that OCC Rule 801 and 805 prohibit exercising puts on March 15, 2013 and nothing in any OCC Rules would allow the exercise of puts that were owned by Perception Advisors /Edelman to be exercised on the Friday March 15, 2013.

22) I , John Olagues affirm none of Mr. Siciliano's factual or legal claims as to the timing of the sales of stock are accurate since it is prohibited to exercise puts which causes a sale of stock prior to the Saturday expiration date.

23) I , John Olagues affirm none of his factual or legal claims as to the timing of the cancellation or the expiration of the written calls are accurate.

24) I , John Olagues affirm that I made two attempts to have FRCP Rule 26(f) conferences.

25) I, John Olagues affirm that none of Mr. Siciliano's factual or legal claims as to the lowering of his stock beneficial ownership are accurate and that Mr. Siciliano's claim that Perceptive's beneficial ownership (as defined in SEC Rules) was below 10% when the calls were cancelled or expired is false.


Respectfully submitted:

John Olagues

5

John Olagues affirms that March 16, 2013 was a Saturday and was not a business day. Olagues affirms that the business day immediately prior to the Saturday expiration date was Friday March 15, 2013, which was a business day.

John Olagues affirms that OCC Rule 801 and 805 prohibit exercising puts on March 15, 2013 and nothing in any OCC Rules would allow the exercise of puts that were owned by Perception Advisors /Edelman to be exercised on the Friday March 15, 2013.

22) I , John Olagues affirm none of Mr. Siciliano's factual or legal claims as to the timing of the sales of stock are accurate since it is prohibited to exercise puts which causes a sale of stock prior to the Saturday expiration date.

23) I , John Olagues affirm none of his factual or legal claims as to the timing of the cancellation or the expiration of the written calls are accurate.

24) I , John Olagues affirm that I made two attempts to have FRCP Rule 26(f) conferences.

25) I, John Olagues affirm that none of Mr. Siciliano's factual or legal claims as to the lowering of his stock beneficial ownership are accurate and that Mr. Siciliano's claim that Perceptive's beneficial ownership (as defined in SEC Rules) was below 10% when the calls were cancelled or expired is false.

Respectfully submitted:

John Olagues

State of Louisiana
Parish of Jefferson
Subscribed and sworn to before me this
5th day of March 2016

KIM J LORD, Notary Public
MY COMMISSION EXPIRES AT MY DEATH

5

# HIGH TECH AUTOMOTIVE

# INVOICE

255 HICKORY AVENUE
HARAHAN, LA. 70123
Phone 504 737-8922  Fax 504 737-0350

**INVOICE #**
**DATE: 3/3/16**

**Bill To:**

John Olagues
Phone  504

**For:**
Notary Services

| DESCRIPTION | AMOUNT |
|---|---|
| Notarization | 10.00 |
| | cash |
| | |
| **TOTAL** | |

Make all checks payable to **HIGH TECH**
If you have any questions concerning this invoice, contact KIM at 504 737-8922.

**THANK YOU FOR YOUR BUSINESS!**

**Exhibit 1**



SEC Form 4

**FORM 4**

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Estimated average burden | |
| hours per response: | 0.5 |

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b). [X]

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| PERCEPTIVE ADVISORS LLC | Aegerion Pharmaceuticals, Inc. [ AEGR ] | Director    10% Owner |
| (Last)   (First)   (Middle) | 3. Date of Earliest Transaction (Month/Day/Year) | Officer (give title below)    Other (specify below) |
| 499 PARK AVENUE<br>25TH FLOOR | 06/15/2013 | |
| (Street) | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) |
| NEW YORK   NY   10022 | | Form filed by One Reporting Person |
| (City)   (State)   (Zip) | | X   Form filed by More than One Reporting Person |

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 06/15/2013 | | X | | 100,000 | A | $25 | 3,473,426 | I | See Footnotes(1)(2)(6) |
| Common Stock | 06/15/2013 | | X | | 100,000 | A | $25 | 3,573,426 | I | See Footnotes(1)(3)(6) |
| Common Stock | 09/05/2013 | | S | | 700,000 | D | $89.2 | 2,873,426 | I | See Footnotes(1)(4)(6) |
| Common Stock | 09/05/2013 | | S | | 50,000 | D | $89.2 | 2,823,426 | I | See Footnotes(1)(5)(6) |

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
**(e.g., puts, calls, warrants, options, convertible securities)**

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 6) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Call option (right to buy) | $25 | 06/15/2013 | | X | | | 1,000 | 06/15/2013 | 06/15/2013 | Common Stock | 100,000 | $0 | 1,000 | I | See Footnotes(1)(2)(6) |
| Call option (right to buy) | $25 | 06/15/2013 | | X | | | 1,000 | 06/15/2013 | 06/15/2013 | Common Stock | 100,000 | $0 | 0 | I | See Footnotes(1)(3)(6) |

| 1. Name and Address of Reporting Person* |
|---|
| PERCEPTIVE ADVISORS LLC |
| (Last)   (First)   (Middle) |
| 499 PARK AVENUE<br>25TH FLOOR |
| (Street) |
| NEW YORK   NY   10022 |
| (City)   (State)   (Zip) |

1. Name and Address of Reporting Person*

**Exhibit 2**

**Investor Services**

1:47 PM
March 3,
2016
(43 minutes
ago)

to me

Hello John,

The answers to your questions are as follows:

1.   If I exercise puts, I apparently am not required to buy the stock to cover the short position, assuming i have the margin to hold the positions?

This could certainly be true, if your broker allows you to do so.

2.   If I am long stock and decide to exercise some puts, can I go short against the box by borrowing the stock for delivery?

You might want to contact the SEC regarding this question.

3.   Is there any OCC rule of OIC rule that forces me to deliver long stock to cover puts that I have just exercised?

I am not aware of any such rule.

Regards,
Ed Modla
OCC - Investor Services
options@theocc.com

**From:** John Olagues [mailto:olagues@gmail.com]

**Sent:** Wednesday, March 02, 2016 8:02 PM
**To:** Investor Services
**Subject:** Covered puts

*Options involve risk and are not suitable for everyone. Prior to buying or selling an option you must receive a copy of Characteristics and Risks of Standardized Options. You may obtain a copy by calling 1-888-678-4667. OCC's Investor Services provides free educational information about products that are cleared by The Options Clearing Corporation (OCC). The information provided herein is without warranty of any kind, and should not be construed as investment advice or a recommendation, solicitation or offer to buy or sell any option or any other security. By using this service, you agree that you will not seek to hold OCC, any OCC employee or agent or any OCC affiliate liable for any innocent or negligent misstatements or omissions.*

John Olagues
413 Sauve Rd.
River Ridge LA.
70123

Pro Se Intake Unit
U.S. District Court.
Southern District of New York
Daniel Moynihan
United States Court house
500 Pearl St. Room 200
New York, New York 10007

U.S. POSTAGE
NEW ORLEANS, LA
MAR 03 '16
AMOUNT
$2.30
R2304M111046E-15