UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

John Olagues & Ray Wollney,

                Plaintiffs,

–v–

Perceptive Advisers LLC, *et al.*

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: SEP 0 9 2016

15-cv-1190 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

    Plaintiffs John Olagues and Ray Wollney bring this *pro se* derivative action on behalf of Repros Therapeutics, Inc. ("Repros"), against Defendants Perceptive Advisers LLC, Perceptive Life Sciences Master Fund Ltd., Joseph Edelman, (collectively "Perceptive") and Repros as a nominal defendant. Plaintiffs seek to hold Defendants liable under Section 16(b) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78p(b), and SEC Rule 16b–6(d), 17 C.F.R. § 240.16b–6(d), for failure to disgorge "short-swing" profits derived from selling call options during a downturn in Repros stock. Defendants have moved to dismiss the complaint. For the reasons below, Defendants' motion to dismiss is denied without prejudice to refiling on the schedule set forth in this order.

**I.    Background**

    The following facts are taken from the complaint and assumed to be true for purposes of this motion. Perceptive is a major shareholder of Repros. By May 11, 2012, after several large purchases at prices around $5 per share, Perceptive owned 2,862,560 shares of Repros—16.7% of the company. Second Am. Compl. ¶ 10. The price of Repros stock rose dramatically during 2012. *Id.* On January 3, 2013, with Repros stock trading at $16 per share, Perceptive sold calls—options to buy Repros stock at a set price—expiring on May 18, 2013. *Id.* Repros stock

1

soon rose to $17, and Perceptive sold more calls. *Id.* At the end of January, however, the stock price tumbled precipitously. *Id.* On January 28–29, 2013, with the stock price in freefall, Perceptive sold calls and bought puts (options to sell Repros stock at a set price) for 2,650,000 shares of Repros stock. *Id.* Perceptive continued to sell calls and buy puts until March 5, 2013. *Id.* Most of Perceptive's options had an expiration date of March 16, 2013. *Id.* When trading closed on Friday, March 15, 2013, Repros stock was worth $9.42 per share. *Id.*

On March 16, 2013, Perceptive's put options were automatically exercised on their expiration date. *Id.* In exercising its puts, Perceptive sold 2,050,000 shares of Repros at the option contract price. *Id.* On the same day, call options on 2,200,000 of Perceptive's Repros shares expired unexercised. *Id.* Plaintiffs estimate that Perceptive made almost $4,000,000 on the puts, and $1,700,000 on the calls. *Id.*

Plaintiffs wrote a letter to Repros "more than 60 days prior to the filing of the suit" requesting that Repros act to recover Perceptive's profits from its calls expiring March 16, 2013, under Section 16(b). *Id.* at 1–2. When Repros did not respond, Plaintiffs filed suit on February 10, 2015. Dkt No. 1. Defendants moved to dismiss the second amended complaint on December 3, 2015. Dkt No. 44.

## II. Legal Standard

When a party moves to dismiss under Rule 12(b)(6), the pleading will withstand the motion so long as it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Regardless of the level of factual detail provided, if "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," then the Court will dismiss the case. *Twombly*, 550 U.S. at 558. A court evaluating a motion under Rule

12(b)(6) must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In addition to the text of the complaint, the Court may consider documents attached as exhibits, incorporated by reference, or that are "integral" to the complaint, as well as public SEC filings. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). The Court may also take judicial notice of the public rules of the Options Clearing Corporation ("OCC") and the Financial Industry Regulatory Authority ("FINRA") under Federal Rule of Evidence 201. *See Forgione v. Gaglio*, No. 13 CIV. 9061 (KPF), 2015 WL 718270, at *17 (S.D.N.Y. Feb. 13, 2015).

Where, as here, litigants are proceeding *pro se*, it is "well established" that their submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks, citation, and emphasis omitted).

## III. Discussion

Plaintiffs allege in the complaint that Section 16(b) requires Defendants to disgorge back to Repros their profits made from calls on Repros stock expiring March 16, 2013. Defendants respond that the complaint must be dismissed because they were not statutory insiders subject to liability under Section 16(b) at the time the calls expired. As will be explained below, the Court cannot determine, based on the briefing before it, whether Defendants were statutory insiders at the time the calls expired.

### A. Liability for Short-Swing Insider Trading

3

Section 16(b) provides that "any profit realized by [a statutory insider] from any purchase and sale, or any sale and purchase, of any equity security . . . within any period of less than six months . . . shall inure to and be recoverable by the issuer." 15 U.S.C. § 78p(b). Liability under Section 16(b) attaches when "there was (1) a purchase and (2) a sale of securities (3) by . . . a shareholder who owns more than 10 percent of any one class of the issuer's securities (4) within a six-month period." *Roth v. Goldman Sachs Grp., Inc.*, 740 F.3d 865, 869 (2d Cir. 2014) (alteration in original). However, Section 16(b) contains an important carve-out: there is no liability for any transaction if the defendant was not above the 10% threshold "both at the time of the purchase and sale, or the sale and purchase, of the security . . . involved." 15 U.S.C. § 78p(b). The statute also immunizes "any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection." *Id.*

In *Roth*, the Second Circuit considered how Section 16(b) applies to the sale of call options. 740 F.3d 865. The Court explained that "for purposes of Section 16(b), the expiration of a call option within six months of its writing is to be deemed a 'purchase' by the option writer to be matched against the 'sale' deemed to occur when that option was written." *Roth*, 740 F.3d at 872. As a result, "any insider who writes a [call] option on securities of the issuer is liable under Section 16(b) to the extent of any premium received for writing the option if the option is either canceled or expires unexercised within six months of its writing." *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 309 (2d Cir. 1998)); *see* 17 C.F.R. § 240.16b-6(b). Section 16(b) thus operates to prevent an insider from profiting by selling options, "knowing, by virtue of his inside information, that the option will not be exercised within six months." *Gwozdzinsky*, 156 F.3d at 309.

### B. The Puts Were Exercised and the Calls Expired Simultaneously at 5:30 pm on March 15, 2013

The sole issue raised by the motion to dismiss is whether Plaintiffs have plausibly alleged that at the time the call options expired—*i.e.*, at the time of "purchase"—Perceptive owned more

4

than 10% of Repros stock and was thus an insider as defined by Section 16(b). After exercising its puts and selling more than two million shares, Perceptive dropped down below the 10% ownership threshold. If the calls expired before this divestment took place, then Perceptive must disgorge any profits it made writing the calls. If, however, the puts were exercised before the calls expired, then Perceptive was not a statutory insider at expiration, and Plaintiffs are entitled to nothing. Accordingly, in order to determine whether Perceptive was more than a 10% shareholder at the time the calls expired, the Court must first determine both when the calls expired, and when the puts were exercised.

The parties offer opposite accounts of the order in which the transactions took place for purposes of Section 16(b). Their disagreement is legal, not factual. Defendants do not challenge the plausibility of the following key underlying factual allegations. First, both the puts and the calls were scheduled to expire on March 16, 2013, at 11:59 p.m. *See* Compl. ¶ 10; Defs.' Br. at 12; Pls.' Br. at 2; Siciliano Decl. Ex. A; OCC Bylaws, Art. I, ¶ E.19 (setting the expiration dates and times for option contracts). Second, the puts were automatically exercised on the expiration date as per OCC rules because they were "in the money," *i.e.* profitable to exercise, and Perceptive had not supplied contrary instructions. Compl. ¶ 10; Defs.' Br. at 13; *see* OCC Rule 805. However, the parties disagree on the import of these facts under Section 16(b). In a Form 4 filed with the SEC, Perceptive reported that the puts were exercised on March 15, 2013, a day before the calls expired on March 16, 2013. Siciliano Decl. Ex. A. If the Form 4 is correct, Defendants were not statutory insiders when the calls expired. Plaintiffs, by contrast, claim that for legal purposes the calls expired on March 15, but the puts were not exercised until March 16. As will be explained below, each party's account is half right and half wrong.

In order to determine when the transactions in this case took place for purposes of Section 16(b), the Court must apply the statute's framework for identifying purchases and sales of securities. The Exchange Act defines "purchase" to "include any contract to buy, purchase, or otherwise acquire," 15 U.S.C. § 78c(13), and "sale" to "include any contract to sell or otherwise dispose of," *id.* § 78c(14). The phrases "otherwise acquire" and "otherwise dispose of" are

5

capacious, and courts interpret these terms pragmatically in light of the statute's purpose of preventing "speculative abuse." *DiLorenzo v. Murphy*, 443 F.3d 224, 228 (2d Cir. 2006).

The rule that has emerged regarding the timing of transactions is that for the purposes of Section 16(b), a purchase or sale of securities takes place when an insider "incur[s] an irrevocable obligation" to complete the transaction. *Id.* at 229 (citing *Blau v. Ogsbury*, 210 F.2d 426, 427 (2d Cir. 1954)); *see also Riseman v. Orion Research, Inc.*, 749 F.2d 915, 918–19 (1st Cir. 1984) ("Under federal law, it is well settled that an insider acquires stock for purposes of § 16(b) when he has incurred an irrevocable liability to take and pay for the stock and his rights and obligations have become fixed even though the formalities necessary for the transfer of title may not have yet occurred."); *Piano Remittance Corp. v. Reliance Fin. Servs. Corp.*, 618 F. Supp. 414, 418–19 (S.D.N.Y. 1985). The date when securities are actually transferred is not relevant. *See Riseman*, 749 F.2d 918–19; *Piano Remittance*, 618 F. Supp. at 418–19; *see also Prager v. Sylvestri*, 449 F. Supp. 425, 433 (S.D.N.Y. 1978) ("The technicalities of stock transfers, such as the passing of title or the exchange of the shares are, by themselves, of no import for § 16(b) purposes."). The reasoning behind this rule is that once a purchase or sale has been "sealed," it can no longer "be turned to speculative advantage." *Prager*, 449 F. Supp. at 433.

Applying this rule to the timing of the puts, the Court concludes that they were exercised at 5:30 p.m. on March 15, 2013. Perceptive's exercise of its puts was a sale of securities, albeit one specially exempted from liability under Section 16(b) by the SEC. *See* Rule 16b-6(b). Perceptive incurred an "irrevocable obligation" to exercise the puts and sell the underlying shares of Repros stock at 5:30 pm Eastern Time on Friday, March 15, 2013. That was the last moment that Perceptive could have submitted instructions not to exercise its puts. FINRA Rule 2360(b)(23)(A)(iv) (Dec. 5, 2011) ("Option holders have until 5:30 p.m. Eastern Time ('ET') on the business day immediately prior to the expiration date to make a final exercise decision to exercise or not exercise an expiring option. Members may not accept exercise instructions . . . after 5:30 p.m. ET."); *see also* OCC Rule 801; OCC Rule 805. Accordingly, that was the time

that the sale of Perceptive's shares took place, and the time that Perceptive ceased to be a statutory insider.

Like the exercise of the puts, for purposes of Section 16(b) the expiration of the calls occurred at 5:30 pm on March 15, 2013. As the Second Circuit explained in *Roth*, the expiration of calls sold by Perceptive was a purchase of securities because it was the moment when "the writer's opportunity to profit on the underlying stock [was] realized." 740 F.3d at 872, 873–74. This constructive "purchase" was consummated at 5:30 pm on March 15, 2013, the last moment the holders of the calls could have chosen to exercise them—in the language of *DiLorenzo*, when the holders "irrevocably" committed to letting the call options expire. 443 F.3d at 229. Until that moment, Perceptive's profits from writing the call options could have been wiped out by a change in Repros's share price. Perceptive's profits from writing the call options became secure against changes in market conditions and were thus "realized" at 5:30 p.m. on March 15, 2013. This application of the "irrevocable obligation" rule comports with its rationale of tracking the last point in time when inside information could be abused. Up until 5:30 p.m. on March 15, 2013, Perceptive could have used the calls to benefit from insider knowledge—for instance, by trying to buy back the call options if it knew that a spike in Repros's share price was imminent. Perceptive's opportunity to abuse insider knowledge in this way ended when the window to submit exercise instructions closed. Accordingly, March 15, 2013, at 5:30 p.m. is the date and time of the "purchase" for purposes of Section 16(b).

Defendants agree with the above account of the timing of the puts. Defs.' Br. 16. However, they insist that the call options expired on March 16, 2013, at 11:59 p.m., because that is the expiration date and time set by the OCC. *Id.* at 9–10. Defendants make no effort to explain why the date stated in the OCC rules should govern the calls but not the puts. Nor is it clear why such an approach would be appropriate. The puts and the calls were two instruments set up by Perceptive to profit from a downturn in Repros stock. The options are mirror images of each other: the calls let others buy Repros stock at a high price from Perceptive, and the puts let Perceptive sell Repros stock at a high price. The options were written contemporaneously,

7

covered a similar volume of shares, and had the same expiration date. Final exercise instructions for both options were due by 5:30 p.m. on March 15, 2013. Both sets of options were resolved automatically by OCC on the expiration date—the puts were automatically exercised because they were profitable, and the calls were not because they were worthless. As discussed previously, the Court is bound to apply the "irrevocable obligation" standard, and this outcome comports with the policies underlying the statute. Even if the Court could rule differently, however, Defendants have presented no reason why the two parallel options should be treated differently under Rule 16(b).

Defendants next argue that even if the two transactions nominally occurred at the same time, "the Puts obviously had to have been exercised before all options expired on that date, including the Call options at issue in this case." Defs.' Br. at 12 (citation omitted). Their stated rationale is that "[l]ogically, a Put cannot be exercised after it has expired—indeed, if expiration preceded exercise, there would be nothing left to exercise." *Id.* This argument is unsupported by authority, and it is unpersuasive for two reasons. First, as a matter of logic, there is no particular reason why exercise of options must precede expiration. The OCC could just as easily resolve all options contracts simultaneously at the expiration time, exercising those options that are in the money and discarding those that have expired worthless. Second, for reasons discussed above, purchases and sales occur for purposes of Section 16(b) when those transactions become "irrevocable," and not when the formalities of stock transfer are complete. *See DiLorenzo*, 443 F.3d at 229. Even if Defendants were right that the OCC must process exercises before expirations, it would have no impact on when the option holders incurred an irrevocable obligation to exercise their options or allow them to expire. For these reasons, the Court determines that the calls expired and the puts were exercised *at the same time*.

### C. Further Briefing is Necessary to Determine Whether Perceptive was a Statutory Insider When the Calls Expired

Having determined that the two transactions took place simultaneously, the critical remaining question is whether Perceptive owned more than 10% of Repros (and was thus a statutory insider) when the calls expired. Defendants have not argued that the complaint should be dismissed in the event that the Court determines—as it has now done—that the two transactions occurred at the same time. Indeed, neither party has briefed the issue. The motion to dismiss is therefore denied without prejudice to refiling with necessary supplemental briefing on this question.

If Defendants wish to file a renewed motion to dismiss in light of the Court's determination that the expiration of the calls and the exercise of the puts occurred simultaneously at 5:30 p.m. on March 15, 2013, they may do so subject to the following schedule: Defendants' brief of no more than 10 pages shall be due September 23, 2016. Plaintiffs' brief of no more than 10 pages shall be due October 7, 2016. Defendants' reply of no more than 5 pages shall be due October 14, 2016. If Defendants elect not to file a renewed motion to dismiss, their answer shall be due September 23, 2016.

## IV. Conclusion

For the reasons set forth above, the motion to dismiss is denied without prejudice to refiling subject to the direction and briefing schedule set forth above. This resolves Dkt. No. 44. This case remains referred to Judge Netburn for general pretrial.

SO ORDERED.

Dated: September 8, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge